## WHIGHAM v. BANNON, ADMR.

*Executors and administrators—Action by daughter for services rendered to deceased mother—Evidence—Codicil to mother's will stating daughter compensated, inadmissible, when—Expenditures by daughter while caring for mother, inadmissible—Wills—Legatee may renounce legacy—Communication to attorney in presence of third party not privileged—Section 11494, General Code—Exclusion of testimony not prejudicial where party complaining secured verdict, when.*

1. Legatee may always renounce legacy.
2. In daughter's claim against her mother's estate for services rendered under agreement, codicil of will containing statement that mother forgave debt of plaintiff in discharge for services, being mere self-serving declaration as to debt, *held* improperly admitted to reduce daughter's

claim in absence of pleading as to provisions of codicil and acceptance thereof by plaintiff or pleading and proof of the debt as set-off.

3. Under Section 11494, General Code, communication to attorney in presence of third party is not privileged.

4. Where plaintiff secured verdict but was merely complaining of amount, exclusion of evidence, which would only have tended to strengthen plaintiff's case but would not have affected amount, *held* not prejudicial error.

5. In daughter's action against mother's estate for services rendered decedent, exclusion of testimony tending to show expenditures made by plaintiff while caring for parent *held* proper.

(Decided June 24, 1926.)

ERROR: Court of Appeals for Scioto county.

*Mr. B. F. Kimble,* for plaintiff in error.
*Mr. E. G. Millar,* for defendant in error.

MAUCK, P. J.  Lucy Whigham filed her petition in the court of common pleas against the personal representative of Mina Lauter, setting forth that she was the daughter of Louis Lauter, who died in March, 1924, and Mina Lauter, who died in November of that year; that plaintiff and her husband were not living with plaintiff's parents when in March, 1923, the plaintiff's mother, Mina Lauter, upon a verbal agreement to reasonably compensate plaintiff, induced plaintiff and her husband to give up their home and move into the home of the plaintiff's parents; that pursuant to such agreement the plaintiff did move into her parents' home and cared for both of them from May 21, 1923, to the father's death in March, 1924, and for the mother until the latter's death in November of

that year; that the reasonable and proper value for
the services during the life of the father was $40
per week, and the reasonable value for caring for
the mother after the father's death was $20 per
week, amounting in all to $2,720; and that her
claim had been disallowed by the administrator.
She therefore sought judgment for the amount
mentioned.   The answer, outside of some purely
formal admissions, was a general denial.  Trial was
had and a verdict returned in favor of the plain-
tiff in the sum of $800.  The plaintiff was dis-
satisfied with the amount of the verdict and filed
her motion for a new trial.  This was overruled,
judgment was entered on the verdict, and the
plaintiff now prosecutes error to this court.

The most serious assignment of error is one
relating to the admission in testimony of "Defend-
ant's Exhibit A" and the charge of the court upon
the effect of the admission in testimony of that
exhibit.  This exhibit was a codicil to the will of
Mina Lauter.  The plaintiff had offered testimony
tending to show that the services rendered by her
in caring for her parents were pursuant to an
express understanding and agreement had with her
mother to the effect that the plaintiff should be
compensated.   About this time what is called
"Plaintiff's Exhibit A" seems to have appeared
in the case at the trial table.  This exhibit was an
unprobated will executed by Mrs. Lauter about
the time plaintiff claims the contract sued upon
was made.  Both parties agreed that "Plaintiff's
Exhibit A" should go in testimony.  At this time
the attorney for the defendant indicated his desire
to amend the answer for the purpose of setting

up that Mrs. Lauter by her will had fully compensated the plaintiff for her services. No such amendment was prepared at the time, although it seems to have been considered to have been made and a reply thereto waived. "Plaintiff's Exhibit A," that is the original will of Mrs. Lauter, provided that her husband during his life should have the use of her real estate, and that thereafter the real estate should be sold, and, after certain small legacies were paid, the residue should pass to the plaintiff. In the course of the testimony of the defendant a clerk from the office of the probate judge was placed on the stand, and through him "Defendant's Exhibit A" was shown to be the last will and testament, including codicil, of Mina Lauter, the will being dated August 5, with a codicil dated August 15. This will was offered in evidence and admitted over plaintiff's objection. This will of August 5 radically differed in its terms from the unprobated will of March, 1923, in that it did not favor plaintiff over three others of the testatrix's children. By the codicil of August 15 the testatrix provided thus:

"As compensation to Lucy Whigham for caring for and maintaining me, both during the past and subsequent to the execution of this codicil, I give and bequeath to her my piano and sewing machine; also, I direct and it is my will that no charge be made against her by my executor for the rent of my house which has been, and is, occupied by her; and I further direct and it is my will that the loan I have made to her in the sum of seven hundred dollars ($700.00) be not required to be paid but that the same be canceled."

When the court came to instruct the jury upon the presence in the case of this exhibit it was said:

"You will have this second will with you, and you are at liberty to read the entire contents of the will. It is very brief. As a part of the will, commonly known as a codicil, there is a provision made by the testatrix to the effect that in consideration of the services which the plaintiff in this case had rendered for her and her husband, that she gave her seven hundred dollars ($700) with one or two other articles, the value of which has not been determined. As has been stated by counsel, the testatrix had no right to fix the compensation. That is for this jury to do."

Later, concerning the codicil, the court said to the jury:

"The court should be more specific perhaps in that. The purpose in admitting the second will was to show what compensation has already been made to this plaintiff for the services that she has rendered. That is not to guide or control the jury, but from whatever you find in favor of the plaintiff, or if you find in favor of her at all, you should deduct the seven hundred dollars ($700) as indicated in the codicil of the will. If you find that the value of these services were worth more than that we think it proper that that should be deducted, and if you find that the services were worth no more than that, or less, then the verdict should be for the defendant in like amount."

There are numerous cases where the acceptance by a legatee of the benefits of a will are held to constitute an estoppel to deny recitations in a will

which but for such acceptance would be open to dispute by the legatee (28 Ruling Case Law, 329; *Charch* v. *Charch*, 57 Ohio St., 561, 49 N. E., 408; *Huston* v. *Cone*, 24 Ohio St., 11, but no such case was here attempted to be made. Here is an enforced credit applied on the plaintiff's claim, not because of anything the plaintiff has done or said, but because the debtor asserts in her will that she was entitled to such credit. Surely there is nothing more in this than the self-serving declaration of an interested party.

It fairly appears, too, that the verdict returned by the jury would have been $700 larger but for the use thus made of the codicil. The language of the codicil having this effect, eliminating superfluous language, is:

"As compensation to Lucy Whigham for caring for and maintaining me, both during the past and subsequent to the execution of this codicil,  *  *  * it is my will that the loan I have made to her in the sum of seven hundred dollars ($700.00) be not required to be paid."

Here is an outright declaration that the mother has made a loan to the daughter in the sum of $700, and that the daughter has rendered and is expected to thereafter render the mother valuable services. In consideration of the services mentioned it proposes to forgive the $700 debt. This situation certainly illustrates the soundness of the doctrine that it takes two to make a bargain. The fact that the daughter is a creditor entitled to compensation could, of course, be shown by this codicil, or by any other declaration of the decedent. We know, however, of no rule of evidence that

would permit a declaration of the decedent to prove that the daughter owed her. But even if it were shown that the daughter owed the mother $700 when the codicil was drawn in August, it is conceivable that she paid it before the mother died in November, or even though she owed the debt in August it may have been barred by the statute of limitations in November, or the mother might have forgiven it during her life or assigned it to a third person. One can imagine many reasons why the mere attempt of the testator to provide for a cancellation of mutual accounts would fail.

The language quoted was a mere proposal. Of course, if the daughter had acknowledged her indebtedness and had desired to act under this item to secure a cancellation of such indebtedness, by offsetting her claim for services against it, she would have had a right so to do although the executor and other beneficiaries under the will might have thought her services worth much less than $700. All that the mother could do and did do was to give her daughter the privilege of making this set-off. She could not, nor can any one, compel the daughter to exercise the privilege thus bestowed. A legatee may always renounce a legacy. 3 Woerner on Law of Administration (3d Ed.), 1495. It follows that the daughter had the right to elect whether she would take the forgiveness of the asserted debt in satisfaction of her claim for services. If she did so elect she is bound, not because the will so provided, but because of her acceptance thereof, and she is bound to surrender, not a part, but all of her claim for services.

"A claim against a testator's estate for labor is

not cut off by the will bequeathing the claimant a legacy unless it purports to be in view of such claim, and has been accepted." Wright, 133.

It was accordingly necessary, if the defense would avail itself of the codicil, to plead not only the provisions of the codicil, but the acceptance thereof by the plaintiff. If there were in fact no such acceptance the executor has no defense under the codicil, but, of course, would still have the right to plead the $700 as a set-off, but that would require proof, not of the terms of the codicil, but proof of the actual indebtedness owing by the plaintiff to the defendant.

The plaintiff in error relies upon the authority of *Younce* v. *Flory,* 77 Ohio St., 71, 83 N. E., 305, and *Cope* v. *Farmer,* 8 C. C., 145, 4 C. D., 337. The principle on which those cases was decided, however, is not in conflict with the views herein expressed. The *Cope case* turned on a question of arithmetic rather than law. The *Younce case,* following *Painter* v. *Painter,* 18 Ohio, 247, held that where the testator provided that an equality among his children was to be subject to certain advancements to be ascertained in an indicated way, parol evidence was not competent to show that the indicated way resulted in an inequitable and uncontemplated division of the property. In that case the testator was disposing of his own property and had an undoubted right to dispose of it subject to any conditions or diminutions he pleased. There the legatees were accepting the legacy. In the case at bar the testator seeks to dispose of an asset that she may or may not own, on terms that the legatee evidently does not accept.

The admission of the will and codicil in evidence for the purpose of defeating recovery or diminishing the verdict was improper, and for like reasons the instructions to the jury in that respect were erroneous.

A second assignment of error runs to the exclusion of the testimony of Judge Beatty, proffered by the plaintiff.

It appears that the witness had been the attorney of the testatrix and was expected to testify to certain declarations favorable to the plaintiff, made by his client in the known presence of a third party. This question involves a construction of Section 11494, General Code. The first paragraph of that section provides that an attorney shall not testify concerning a communication made to him by his client in that relation except by the express consent of the client. The third paragraph of that section, relating to husband and wife, provides that a husband or wife may not testify concerning communications made by one to the other "unless the communication was made * * * in the known presence or hearing of a third person competent to be a witness."

It is claimed with some reason that, inasmuch as the statute by express language provides that husband or wife may testify to a communication made in the presence of a third person, an attorney has not a corresponding right to so testify, because the statute does not expressly authorize him to testify when a communication is so received by him. This difference in the language in the two paragraphs of Section 11494 is, however, not conclusive. There is an essential difference in the character of com-

munications made by a husband to a wife and those made by a client to his attorney. The reason that a husband or wife was prevented from testifying at common law against the consort was that the two were identical at law, and, as at that time a party could not testify in his own behalf, so was his wife rendered incompetent to testify for or against him. In our original Code of Civil Procedure, 51 Ohio Laws, 108, parties were made competent to testify generally, but husband and wife were rendered incompetent to testify to any communication between them. It therefore required the phraseology above quoted, placed there by statutory amendment (67 Ohio Laws, 113), to enable a husband or wife to testify to communications made in the presence of a third person. It was, however, not necessary for the Legislature to expressly provide that an attorney might testify to a communication made to him by his client when such communication was made in the known presence of another, for the reason that the attorney was never disqualified in such a case. The attorney was never an incompetent witness. He was only barred from testifying because of the confidential character of the communication made to him, and because public policy required that confidence between attorney and client be encouraged. To be privileged, however, a communication to an attorney has always been required to be of a confidential nature, and if made in the presence of a third person it ceases to be confidential. 5 Wigmore on Evidence (2d Ed.), Section 2311, says:

"The privilege assumes, of course, that communications are made with the intention of con-

fidentiality. The reason for prohibiting disclosure ceases when the client does not appear to have been desirous of secrecy. 'The moment confidence ceases,' says Lord Eldon, 'privilege ceases.' This much is universally conceded.   *   *   *   One of the circumstances, by which it is commonly apparent that the communication is not confidential is the presence of a third person, not being the agent of either client or attorney.''

The same rule is laid down in 28 Ruling Case Law, 561, where it is said that if the client chooses to make or receive his communication in the presence of third persons it ceases to be confidential and is not entitled to the protection afforded by the rule. It follows, therefore, that the first paragraph of Section 11494, barring an attorney from testifying to ''a communication made to him by his client in that relation,'' refers only to communications made to him in a confidential manner, and that such confidential manner does not exist where a third person, not the agent of either party, shares the confidence. The exclusion of Judge Beatty's testimony was consequently erroneous. It was, however, not prejudicial in the instant case because the plaintiff obtained a verdict notwithstanding such exclusion, and Judge Beatty's testimony would have tended to help plaintiff in securing a verdict but would not have affected the amount thereof.

The remaining assignment of error is that testimony was excluded which tended to show the expenditures made by plaintiff during the time she was caring for her parent. This testimony was properly rejected. Her expenditures might have

been provident or improvident. Their character would have opened up another field of controversy collateral to the main question. The measure of plaintiff's recovery was not the expenditures made by her but the value of the services rendered by her.

*Judgment reversed and cause remanded.*

SAYRE and MIDDLETON, JJ., concur.