NICHOLS, J., of the Seventh Appellate District, sitting by designation in the Second Appellate District.

EMLEY, EXR., APPELLEE, *v.* SELEPCHAK, APPELLANT; EMLEY ET AL., APPELLEES.

(No. 198—Decided June 11, 1945.)

*Mr. Raymond B. Bennett,* for appellee John Emley, as executor, and John Emley, individually.

*Messrs. Ainsworth & Gilbert,* for appellant.

DOYLE, J. This is an action in specific performance, maintained by one Mike Selepchak against his brother, John Emley, as executor of the estate of their mother, Annie Selepchak, and against all of his respective brothers and sisters, individually, as heirs, devisees and legatees.

The action arises by way of cross-petition, and John Emley, in his capacity as executor, as well as in his individual capacity, is the sole contestant. The respective brothers and sisters other than Emley are either in default of pleadings, or by their pleadings have joined in the prayer of the claimant.

The cause is in this court for trial *de novo,* on appeal from the Court of Common Pleas of Medina county.

The claimant seeks an order to compel the three devisees of a certain farm property to perform a contract entered into by the mother, by delivering to the clerk of courts a deed conveying the said farm to him upon his payment to the clerk of courts of a balance due on the contract in the sum of $4,000. It is claimed that the mother, five days before her death, executed a new will (thereby revoking a former will) in which she devised the farm to three brothers of claimant, and in so doing breached a valid contract with the claimant, under the terms of which he was to have the property upon her death.

From the evidence in the record it is reasonable to conclude that, in the year 1924, the claimant and his family moved onto the farm in question and worked it for approximately ten years. He then moved to another farm, and, while there residing, was repeatedly importuned by the mother to return to her farm and again work her property. He finally consented and

returned, under the terms and conditions of an oral agreement made in the presence of a third person, who testified to the conversation.

In short, this agreement was that the mother would give the son the farm at her death; conditioned, however, upon the son paying at her death the sum of $4,000 for certain specific legacies. This agreement was entered into in January of 1938, and during the following month the claimant moved to the farm in question and has since there resided.

In December of the same year, both the mother and son called upon attorney E. W. Valko, of Cleveland, for the purpose of a definite understanding of their contractual standing. The attorney testified, over objection: "Mrs. Selepchak said she wanted to make some sort of agreement or paper in writing, whatever is necessary, that she wants to give Mike the farm, and Mike said to her that they had an understanding before but that he wasn't going to continue on the farm unless he was sure of the farm after her death, a lot of improvements were necessary, unless there was a definite understanding between them that he will remain as the sole owner after her death. And we discussed various ways and means of doing it."

The attorney further testified that each one said that "they had made arrangements before coming that Mike was to have the farm, that Mike was going to remain on the farm, that he was to pay certain legacies which were a charge on the farm."

Continuing, the attorney testified that he prepared and had executed a will for the mother and "an instrument giving Mike a life rent in order to protect Mike. Mrs. Selepchak wanted to know what I could draw up so that he would not be disturbed by her or any of her relatives. I suggested that a lease be given during that time, her lifetime, terminating on her death and on Mike paying the legacies and he would have the farm."

·The executed will and lease to which reference is made are before us in evidence. The will specifically devised the farm property to the claimant son "to be his absolutely and in fee simple, subject only to the payment of the legacies heretofore provided * * *."

Under this and other language, the devise was charged, in the amount of $4,000, with the payment of legacies to four of her children. The lease conveyed the premises to the claimant for a term extensive with the grantor's life, subject to payment of rent, taxes, insurance, etc., and further subject to a reservation to the lessor during her lifetime to all rights and benefits to be derived from a natural gas lease; "it being understood that by this agreement no interest to said well passes to the lessee during the lessor's natural life."

1. In our consideration of the problem before us, we believe it sufficient to confine ourselves only to the rules applicable to an action in equity for the specific performance of an oral contract to devise real property.

· We pronounce the rule as follows: An oral agreement to convey or devise land at the death of the promisor may, upon breach by the promisor, be specifically enforced in equity notwithstanding the statute of frauds and the statute applicable to agreements to make a devise by will (Sections 8621 and 10504-3*a*, General Code, respectively), where the agreement has been performed by the one seeking to enforce it, by taking possssion and paying rent, taxes and insurance under the provisions of a written lease for the life of the lessor and by making valuable improvements upon the estate, under the terms of the agreement, to such an extent that he cannot be restored to his original situation. See *Derby* v. *Derby,* 248 Mass., 310, 142 N. E., 786; *Ayres* v. *Cook,* 140 Ohio St., 281, 43 N. E. (2d), 287; and cases cited supporting text in 37 Ohio Jur-

isprudence, Specific Performance, Sections 93 and 121.

The complainant in this case retained possession under the lease, oral agreement, and will executed pursuant to the oral agreement, made improvements at a cost of approximately $5,000 on property appraised in October, 1943, for $7,500, and paid the stipulated rent, taxes and insurance. Under these circumstances, we determine that the evidence in the record clearly and convincingly shows that equity should grant the relief sought, following a breach of the contract in the revocation of the will executed in pursuance to the original agreement.

2. Is the testimony of attorney Valko competent? It is vigorously challenged in the record.

A part of the evidence presented to prove the contract to convey by will the farm in question is the testimony of the attorney, who, as heretofore shown, testified to statements made and conversation had in his office and in his presence. The direct evidence and the natural inferences from it are such as to warrant the conclusion that the mother and son selected the attorney to represent each of them, and sought his advice and help in respect to a contractual relationship between them. It is asserted that this situation requires the application of the statute entitled "Privileged Communications and Acts," and makes the testimony objectionable. This statute—Section 11494, General Code—in so far as pertinent, provides:

"The following persons shall not testify in certain respects:

"1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client * * *."

It is universally held, under statutes exactly or similarly worded, that the communications must be confidential before the privilege will be applied, and as a

result thereof exceptions are made to the strict letter of the law.

"One of the circumstances, by which it is commonly apparent that the communication is not confidential, is the *presence of a third person,* not being the agent of either client or attorney * * *." VIII Wigmore on Evidence (3 Ed.), 602, Section 2311.

And, see, *Foley* v. *Poschke,* 137 Ohio St., 593, 31 N. E. (2d), 845; *Whigham* v. *Bannon, Admr.,* 21 Ohio App., 496, 153 N. E., 252.

Another exception, based upon the same principle of confidentiality, is "when the *same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other * * *." VIII Wigmore on Evidence (3 Ed.), Section 2312.

We conclude that the testimony of lawyer Valko was not privileged in this action.

A decree will be prepared ordering specific performance.

*Decree accordingly.*

Washburn, P. J., and Stevens, J., concur.