**Elizabeth D. OSBORN, Stratford M. Dick and Ann D. Dash, Appellants,**

v.

**The BOATMEN'S NATIONAL BANK OF ST. LOUIS, personal representative of the Estate of Elise B. Morton, deceased, Roberta B. Schmidt, Marjorie Broesel, the Principia Corporation, Peace Haven Association, the Missouri Botanical Garden, the St. Louis Art Museum, Berea College and the Attorney General of the State of Missouri, Respondents.**

No. 58952.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 11, 1991.

Milton Greenfield, Jr., James J. Leightner, Clayton, and John L. Davidson, Jr., St. Louis, for appellants.

Thomas F. Schlafly, St. Louis, for respondents.

GARY M. GAERTNER, Presiding Judge.

Appellants, the children of Katherine Dick, appeal from a decision of the Circuit Court of the City of St. Louis denying their petition for specific performance of an oral agreement to make a testamentary disposition of certain property. We affirm.

On February 18, 1970, Stratford Morton, the father of Katherine Dick and husband to Elise Morton, passed away.[1] Pursuant to the terms of his will, Stratford Morton's estate was split equally between Mrs. Dick and Mrs. Morton. This estate included two tracts of property, a 245 acre tract in Franklin County known as Persimmon Hill and a home in Brentmoor Park, a subdivision in Clayton, Missouri. Mrs. Morton was also the beneficiary of a marital trust, the income of which was to be paid over to Mrs. Morton on a quarterly basis. Upon her death, this trust was to be distributed to whomever Mrs. Morton appointed in her will or, if she failed to exercise her power of appointment, to Katherine Dick or Mrs. Dick's children.

After the funeral of Stratford Morton, Mrs. Morton expressed her desire to Mrs. Dick that they use the Persimmon Hill property as a memorial to Stratford Mor-ton. Mrs. Dick hesitated, wishing to keep the property in the family. Elizabeth Osborn, the daughter of Katherine Dick, testified that, at this point, Mrs. Morton told Mrs. Dick that the property should go to charity and if Mrs. Dick was concerned about a family legacy "the house at Brentmoor and the personal property, in addition to the marital trust, should be sufficient legacy." Miss Osborn testified that her mother then agreed to give Persimmon Hill to charity but noted that "this understanding is something that could essentially be reflected in our wills." No document memorializing this agreement was ever made.

On March 17, 1970, Mrs. Morton made out a last will and testament whereby her interest in the Brentmoor property was to go to Mrs. Dick or Mrs. Dick's children. The will also exercised Mrs. Morton's power of appointment under the marital trust to appoint seventy percent of the trust or $300,000.00, whichever was greater, to the survivor of Mrs. Dick and Mrs. Dick's children.[2]

The next day, Robertson Wall, an attorney for Mrs. Dick in Asheville, North Carolina, sent a letter to Robert Evans, Mrs. Morton's attorney in St. Louis. In this letter, Mr. Wall notified Mr. Evans that Mrs. Dick intended to devise her one-half interest in Brentmoor Park and its tangible property to Mrs. Dick's children, subject to the right of Mrs. Morton to use both the real and personal property for life. Mr. Wall also notified Mr. Evans that Mrs. Dick intended to devise Persimmon Hill to either the Missouri Botanical Gardens or to the State of Missouri as a memorial to Stratford Morton.

One week later, on March 25, 1970, Robert Evans sent a letter to Mr. Wall informing him that Mrs. Morton had executed a will in which she exercised her power of appointment in favor of Mrs. Dick and her

---

1. The evidence reveals that Katherine Dick was Stratford Morton's daughter by a previous marriage and not by his marriage to Elise Morton.

2. The marital trust, apparently, reduced a living trust set up for Mrs. Dick by her mother. On February 25, 1970, Mrs. Dick and Mrs. Morton signed an agreement whereby Mrs. Dick would not file suit against Mrs. Morton if Mrs. Morton used the power of appointment in her will to appoint seventy percent or $300,000.00, whichever was greater, of her marital trust to Mrs. Dick and her children.

children and had given her interest in the Brentmoor Park property to Mrs. Dick and her children.

Approximately one month later, Mrs. Dick executed a last will and testament whereby the Persimmon Hill property was to be devised to the State of Missouri. A copy of this will was sent by Mr. Wall to Mr. Evans.

On September 15, 1970, Mrs. Dick and Mrs. Morton signed an agreement whereby they agreed to make wills giving Persimmon Hill to the Nature Conservancy, a nonprofit corporation in the District of Columbia. The contract made no mention of any other agreement between Mrs. Dick and Mrs. Morton. That same day, both Mrs. Dick and Mrs. Morton executed codicils to their respective wills in accordance with the terms of the contract.[3] On February 12, 1971, Mrs. Dick deeded the Brentmoor property to Mrs. Morton. There is no contract or any other writing indicating why this transaction was carried out. Mrs. Osborn testified at trial that the transaction was for "administrative" purposes.

Mrs. Dick died on February 16, 1978. On May 4, 1984, Mrs. Morton executed a new last will and testament whereby the Brentmoor property and tangible property was to be sold and the money distributed to certain relatives and charitable organizations. Mrs. Morton died on March 8, 1988, and letters testamentary granting independent administration were issued on March 17, 1988.

On November 4, 1988, this action was filed by the children of Katherine Dick. In the petition, the children claimed that Mrs. Dick and Mrs. Morton had a contract whereby Mrs. Dick would give her one-half interest in Persimmon Hill to charity for a memorial to Stratford Morton and Mrs. Morton would leave the Brentmoor property and tangibles to Mrs. Dick or her children. A trial was held on the petition on April 2, 1990, and, on June 17, 1990, the trial court found in favor of the respondents, the Boatmen's National Bank, which was the executor of Mrs. Morton's estate, and various charitable organizations. This appeal followed.

■ Appellants' first claim on appeal appears to have two prongs: First, that the trial court applied the wrong standard of proof, and second, that the trial court's decision is not supported by substantial evidence.

In its order, the trial court stated that "plaintiff's proof fell short of a preponderance of the evidence and far short of proof beyond a reasonable doubt, which was the unusual burden cast upon plaintiff in this instance." Appellants claim that the trial court's application of the "reasonable doubt" standard was error and that the preponderance of the evidence standard is the correct standard to be applied in this case.

Where a party claims the existence of an oral contract to make a testamentary disposition of property, Missouri courts have long held that eight elements of proof are necessary: 1) The contract is definite; 2) it is proved as pleaded; 3) it is established by recent, definite conversations; 4) it is fair; 5) *the proof leaves no reasonable doubt that the contract was made and full performance, as far as possible, has been had;* 6) the performance is referrable solely to the contract; 7) the contract is based upon adequate consideration; and 8) a real contract to devise, rather than proof of a mere disposition to devise is shown. *Walker v. Bohannan*, 243 Mo. 119, 147 S.W. 1024, 1028–29 (Mo.1912); *Bailey v. Cronin*, 694 S.W.2d 518, 520 (Mo.App., W.D.1985) (emphasis added). Until recently, a similar standard of proof was used in cases involving an intervivos gift first claimed after the death of the donor. *Morley v. Prendiville*, 316 Mo. 1094, 295 S.W. 563, 567 (1927); *Cremer v. May*, 223 Mo.App. 57, 8 S.W.2d 110, 116 (1928). In *In the matter of Passman*, 537 S.W.2d 380 (Mo. banc 1976), however, the Missouri Supreme Court aban-

---

**3.** The property was later deeded to the Nature Conservancy with the express agreement that the Nature Conservancy deed the property to the Botanical Gardens. The evidence reveals that the property was to revert to the Nature Conservancy if the Botanical Gardens failed to keep the property in its "natural state."

doned the use of proof beyond a reasonable doubt in cases involving intervivos gifts stating "from this time forward, the phrase [beyond a reasonable doubt] should not be used in instructions in civil cases." *Passman*, 537 S.W.2d at 381. The court, instead, concluded that such cases required proof by evidence that is "clear, cogent and convincing." *Id.* at 384. We believe the holding in *Passman* relating to the demise of the reasonable doubt instruction in civil cases applies here and find that the evidence below only needed to be clear, cogent and convincing evidence.

■ This does not require a reversal in the present case, however. As noted above, the court also found the evidence insufficient to support proof by a preponderance of the evidence. This standard of proof is less stringent than proof by clear, cogent and convincing evidence. If the evidence was insufficient to meet the preponderance of the evidence standard, it certainly did not suffice under the clear, cogent and convincing standard of proof.

■ This leads us to whether the trial court's order is supported by substantial evidence, appellants' second point. See *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the decision of the trial court, this court defers to the trial court's determination of a witness's credibility and the weight to be given to their testimony. *In re Estate of Ross*, 790 S.W.2d 514, 516 (Mo.App., E.D.1990). This court also gives deference to the trial court's conclusions and all fact issues deemed to have been found in accordance with the result the trial court reached. *Webster v. Jenkins*, 779 S.W.2d 340, 342 (Mo.App., W.D.1989).

In the present case, the trial court found that the appellants' witnesses had limited credibility, "this finding is based, in part, on the demeanor of the witnesses, the lapse of time between the conversations and the testimony and the incentive for selective memory." The trial court went on to find that the parties had not intended a contract, but that Mrs. Morton had merely expressed "a mere disposition to devise." In support of its findings, the trial court

considered, not only the credibility of the witnesses, but also the fact that Mrs. Dick and Mrs. Morton "were in the habit of utilizing the services of attorneys in connection with their personal affairs." Yet no writing existed evidencing the alleged contract was ever made. We believe that the evidence below presented a very close case, however, we do not believe the evidence is sufficient to leave us "firmly convinced" that the trial court erred. *Stellwagen v. Gates*, 779 S.W.2d 351, 352 (Mo. App., S.D.1989). Point denied.

■ Appellants next contend that the trial court erred in permitting Robert Hoemeke, an attorney with the law firm representing one of the respondents, to testify at trial. Once again, appellants' claim has two prongs: First, appellants contend that Hoemeke's testimony was barred by the attorney/client privilege; second, appellants contend that his testimony was barred because his law firm represented one of the respondents and his testimony was "adverse" to Mrs. Dick's interests. We disagree.

Counselor Hoemeke testified that he helped handle some of Mrs. Morton's affairs and that, although she normally memorialized her agreements in writing, she never mentioned an oral contract to devise the Brentmoor property to Mrs. Dick or her children. Counselor Hoemeke also testified to several discussions had by Mrs. Morton and Mrs. Dick when Counselor Hoemeke represented them regarding the transfer of Persimmon Hill to the Nature Conservancy. The extent of Counselor Hoemeke's testimony on this issue was to the effect that Mrs. Dick stated that she was making the transfer to fulfill the desires of Stratford Morton to keep the property in its "natural state."

In *Wahl v. Cunningham*, 6 S.W.2d 576 (Mo. banc 1928), the Missouri Supreme Court stated the general rule that "where two or more persons employ the same attorney in the same business, their communications with the attorney in relation to such business are not privileged inter se even though the interest of such persons are adverse to each other, where the disclo-

sures were made in the presence and hearing of all concerned or were intended for the information of all." *Wahl*, 6 S.W.2d at 586. See also *Bashor v. Turpin*, 506 S.W.2d 412, 421 (Mo.1974).

Appellants cite this court to *Heald v. Erganian*, 377 S.W.2d 431 (Mo.1964). *Heald* is clearly distinguishable from the case at bar. In *Heald*, the attorney represented both the plaintiff and the defendant in closing a real estate transaction. The evidence was clear, however, that no conversations between either the plaintiff or defendant in the case were had when all of the parties were present, nor did the attorney have the consent of the parties to testify as to the private discussions. *Heald*, 377 S.W.2d at 441. The present case reveals quite a different set of facts. There is no evidence that the parties had separate meetings with Counselor Hoemeke or intended to keep information given to Hoemeke away from the other party. Indeed, the evidence is quite to the contrary. Mrs. Morton and Mrs. Dick met with Counselor Hoemeke together and a good deal of paperwork, including completed wills, was sent back and forth between the attorneys for the respective parties.

This case is actually closer to *Emley v. Selepchak*, 76 Ohio App. 257, 63 N.E.2d 919 (1945). In *Emley*, Selepchak worked on his mother's farm under the terms and conditions of an oral agreement whereby his mother would give him the farm on her death. *Id.* 63 N.E.2d at 920. The parties visited an attorney to make a will giving the property to the son. The attorney executed a will devising the property to the son, however, the agreement requiring this devise was never put into writing. At trial, the attorney who executed the will was permitted to testify to the terms of the agreement as told to him by Selepchak and his mother. The court of appeals held that, although the attorney/client privilege would apply in this situation to protect disclosure at the instance of third parties, it did not apply in litigation between the parties. *Id.* at 922. See also *England v. England*, 243 Iowa 274, 51 N.W.2d 437 (1952); *Jenkins v. Jenkins*, 151 Neb. 113, 36 N.W.2d 637 (1949); *Carey v. Powell*, 32 Wash.2d 761, 204 P.2d 193 (1949).

Appellants contend that no common interest was involved here "or the beneficiaries of the agreement would not be suing Miss Morton's estate." Appellants argument suggests an exception to the common interest rule that would, in effect, swallow it. We decline their invitation to graft such an exception onto the rule.

■ Appellants also contend that Counselor Hoemeke should have been prohibited from testifying because his firm represented a defendant in the case. Appellants contend that Rule 3.7 of the Missouri Rules of Professional Conduct prohibited Hoemeke from testifying.

Rule 3.7 of the Missouri Rules of Professional Conduct prohibit an attorney from acting as an *advocate* in a trial in which a lawyer is likely to be a necessary witness except under limited circumstances. Rule 3.7(b) expressly permits a lawyer to act as *"advocate"* in a trial where "another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Rule 3.7 clearly applies to attorneys acting as advocates at trial, a situation we do not have with respect to Counselor Hoemeke. In any case, as previously noted, the discussions with Mrs. Dick and Mrs. Morton with respect to Persimmon Hill are not protected as confidential communications in litigation between the parties. Mr. Hoemeke was, thus, properly allowed to testify. Point denied.

■ Appellants next contend that the trial court erred in not permitting them to amend their petition to conform to the evidence. We disagree.

During cross-examination of one of respondents' witnesses, appellants were able to elicit testimony to the effect that no checks were drawn on Mrs. Morton's account to Mrs. Dick around the time Mrs. Dick deeded her one-half interest in the Brentmoor property to Mrs. Morton. Combining this with the 1971 tax return of Mrs. Dick, appellants claim that the trial court should have permitted a claim of lack of

consideration or unjust enrichment for the transfers of the Brentmoor property as an amendment to the petition by implied consent.

 The trial court has broad discretion when determining whether to permit an amendment to the pleadings, and the trial court's decision will not be disturbed on appeal unless there is an obvious and palpable abuse of discretion. *Fisher v. McIlroy,* 739 S.W.2d 577, 580 (Mo.App., E.D.1987). In the present case, the evidence admitted was arguably relevant as to whether or not an agreement existed between the parties. As such, the evidence did not result in an amendment of the pleadings by implied consent. "Amendment of the pleadings by implied consent of the parties occurs when evidence, admitted without objection, bears only on that issue and is not relevant to other issues already in the case." *Id.* Point denied.

 Appellants' last claim is that the trial court erred in failing to grant appellants' motion to amend the judgment or enter an order for a new trial. The basis of this claim is that the trial court did not determine the ownership of the tangible personal property located at the Brentmoor residence. Appellants' petition only stated a cause of action based on an oral agreement between the parties to devise the Brentmoor property to Mrs. Dick or her children. Nowhere is a separate cause of action stated for the tangible property in the Brentmoor residence. When the trial court found no agreement existed between the parties it decided all that it was required to decide by appellants' petition. Point denied.

Affirmed.

CRIST and AHRENS, JJ., concur.