983 S.W.2d 635 (1999)
In the Interest of A.M.C., A.L.C., G.C. and V.L.C.
No. 21923.
Missouri Court of Appeals, Southern District, Division Two.
January 22, 1999.
*636 Richard P. Edgington, Pelts, McMullan & Edgington, Kennett, for Appellant.
Before SHRUM, P.J., MONTGOMERY, J., and GARRISON, C.J.
PER CURIAM.
B.J.C. ("Mother") appeals from a judgment terminating her parental rights with reference to her natural children, A.M.C., born October 6, 1984; A.L.C., born March 29, 1987; G.C., born March 5, 1989; and V.L.C., born December 9, 1990. This judgment was preceded by petitions filed in the Juvenile Court of Dunklin County on February 28, 1996, alleging that each of the four children were in the custody of the Division of Family Services ("DFS") and in need of care and treatment. On April 9, 1996, the court entered an order finding that it was in the children's best interests to be made wards of the court and placed in the custody of the DFS until further order. On January 30, 1997, the Juvenile Officer filed petitions in which he sought to terminate the parental rights of Mother and G.C. ("Father") with reference to each of the four children. The petitions to terminate were tried to the court on July 15, 1997, and resulted in the judgment from which Mother appeals.[1]
The judgment in a termination of parental rights case will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. In the Interest of D.C.H., 835 S.W.2d 533, 534 (Mo.App. S.D.1992). Due regard is to be given to the trial court's ability to assess the credibility of witnesses. Id. In reviewing such a case, we consider the facts and reasonable inferences therefrom in the light most favorable to the trial court's *637 order. In the Interest of B.L.B., 834 S.W.2d 795, 799 (Mo.App. E.D.1992).
The grounds for termination of parental rights must be shown by "clear, cogent and convincing evidence." § 211.447.2.[2] Evidence is clear, cogent and convincing when it instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. In re Interest of A.L.B., 743 S.W.2d 875, 879 (Mo.App. E.D.1987). The clear, cogent and convincing standard is more stringent than that of "preponderance of the evidence." Estate of Cates, 973 S.W.2d 909, 915 (Mo.App. W.D.1998); Osborn v. Boatmen's Nat'l Bank of St. Louis, 811 S.W.2d 431, 435 (Mo.App. E.D.1991).
To terminate the rights of a parent, there must be strict and literal compliance with the statutes and those seeking to terminate the rights have the burden of proof. In the Interest of D.C.H., 835 S.W.2d at 534. The primary concern in any termination case is the best interests of the children. In the Interest of M.E.W., 729 S.W.2d 194, 195 (Mo. banc 1987). The court may reach the issue of the best interests of the children, however, only after it has made a determination that one or more of the statutory grounds for termination exists. In the Interest of M.H., 859 S.W.2d 888, 896 (Mo.App. S.D.1993).
In the instant case, one of Mother's three contentions on appeal is that the judgment terminating her parental rights was not supported by clear, cogent and convincing evidence that she should have known of acts of physical, emotional or sexual abuse committed toward her children. For the reasons which follow, we agree and find it necessary to reverse the order of termination with respect to Mother's parental rights.[3]
The termination of parental rights is governed by §§ 211.442-211.487. The petitions filed here each alleged that they were filed pursuant to § 211.447, and alleged the following as a basis for termination:
2) the child has been adjudicated to have been abused or neglected by the Juvenile Court of Dunklin County, Missouri, do [sic] to:
c) a severe act or re-occurring acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family, to-wit: the parents withhold food from the child as a means of punishment and discipline, by physically abusing the child by striking her[4] leaving bruises and scratches on her body, by the father who enters into a room without wearing clothing and then holding the child, and by requiring the child to stand outside in the elements without clothing.

*638 d) the repeated or continuous failure by the mother and father, although physically and financially able, to provide the child with adequate food, clothing, shelter or education as defined by law, or other care necessary for her [or his] physical, mental or emotional health and development, to-wit: the mother and father having refused to allow the child to eat food or drink liquids on several occasions as method of disciplining the child.[5]
In its judgment, the juvenile court found that "[t]his case was filed under RSMo § 211.47.2(2)(c)" (which we interpret as referring to § 211.447.2(2)(c)), and that there was "clear, cogent and convincing evidence that sufficient facts exist warranting termination" of Mother's parental rights.[6] As we interpret the judgment, the court based the termination on § 211.447.2(2)(c).
Section 211.447.2(2) requires that the court make findings with reference to the conditions or acts referred to in the subparagraphs of that section. In fact, § 211.447.2(2) requires that the court make findings with reference to all of the subparagraphs under that subsection, even if they are irrelevant to the facts of that case. See In the Interest of K.O., 933 S.W.2d 930, 932 (Mo.App. E.D.1996). This is true even if the finding is to only state that the condition referred to in the subsection is irrelevant and the reasons why. In the Interest of K.E., 947 S.W.2d 468, 470-71 (Mo.App. E.D.1997). See also In the Interest of D.T.B., 944 S.W.2d 321, 323 (Mo.App. W.D.1997); In the Interest of K.D.C.R.C.B-T., 928 S.W.2d 905, 908-09 (Mo.App. E.D.1996); In the Interest of S.C., 914 S.W.2d 408, 411 (Mo.App. W.D.1996). Here, the juvenile court failed to make any findings with reference to any of the subparagraphs under that subsection. The juvenile court also failed to make the finding that the termination of Mother's parental rights was in the best interests of the children, a finding also required by § 211.447.2. See In the Interest of D.F.P., 981 S.W.2d 663 (Mo.App. S.D.1998). These deficiencies alone would require us to remand the case for further findings. Such a remand is not necessary, however, because we find that the record before us does not contain sufficient evidence to support the judgment terminating Mother's parental rights.
The evidence in the record of physical, emotional or sexual abuse fails to rise to the level of clear, cogent and convincing. A DFS investigator testified that Father had a drinking problem and that Mother "was not very active in protecting her children." When asked why the DFS recommended termination of Mother's parental rights, the investigator stated that it was due to recurrent acts of physical and sexual abuse, but furnished no specifics. The investigator also stated that Mother was aware of Father's sexual abuse of the three girls and physical abuse of the boy, but did nothing to stop it. Again, however, the investigator failed to furnish any details or basis for such conclusions. *639 Significantly, there is nothing in the record to indicate how the investigator drew these conclusions, the information on which they were based, which of the children were allegedly sexually or physically abused, how many occurrences allegedly occurred, when they occurred, who committed them, or what circumstances existed to indicate that Mother would or should have been aware of them.
A nurse who examined the children testified that A.M.C., the oldest of the girls, had some thickening of the anal fold, venous peeling, and a "bump" of tissue on the hymen which she said was "consistent" with some type of abuse. A.M.C., however, denied to the nurse that she had ever been sexually abused or improperly touched by anyone or anything, but did say that she had injured herself in a fall from her bicycle. The nurse did not categorically state an opinion that A.M.C. had been sexually abused. The nurse further testified that A.L.C., the second girl, also had scar-type tissue of the perineum and tiny cuts in the anal tissue, but stated that this child also denied any type of improper touching. The nurse said that V.L.C., the youngest girl, had some scar tissue from the vagina to the rectum with some peeling of skin and that this was indicative of some type of trauma, but that the girl also denied any history of improper touching of any kind. There were no physical findings with reference to the boy, G.C.
The children themselves also testified. A.M.C. testified that she "got hurt" by Mother and Father; that "they hurt me real bad"; that they hurt her "physically"; that they "abused us" and "hurt us in a bad way"; and that they "pushed me to grow and be a loner to because I didn't want to grow and no and be a loner." She testified that she did not want to live with her parents and did not want to see them. A.L.C., the second girl, testified that she did not want to visit with her parents again because "[t]hey're mean." The boy, G.C., testified that Father and Mother were "mean and stuff like that," and he did not want to go back home. V.L.C., the youngest of the girls, testified that she did not want to live with Father or Mother "[b]ecause they're mean." None of the children testified, however, about any specifics of how Father or Mother was "mean."
The termination petitions alleged that "the parents withhold food from the child as a means of punishment and discipline, by physically abusing the child by striking her leaving bruises and scratches on her body, by the father who enters into a room without wearing clothing and then holding the child, and by requiring the child to stand outside in the elements without clothing." As noted earlier, however, it is the burden of the Juvenile Officer to prove these allegations by clear, cogent and convincing evidence. There is no evidence in the record before us that Mother committed any of these specific acts, nor that she knew or should have known of any such acts being committed by others.
The court also stated in its judgment that it had considered the subsections under § 211.447.3 and specifically addressed three of those subsections, including the following:
(7) According to the juvenile files in these cases and according to the testimony of the eldest child in the family, a severe act or recurrent act of physical or sexual abuse toward the child occurred under circumstances that indicate that the parents knew of or participated in these acts, thereby endangering the welfare of each child in the home.[7]
Again, this finding is not supported by the record before us. The "juvenile files" are not part of the record filed with this appeal. Likewise, our review of the testimony of A.M.C. fails to support this finding. Accordingly, this finding is not supported by the *640 required clear, cogent and convincing evidence.
Section 211.462 specifically requires that the guardian ad litem protect the rights, interests and welfare of the children. Here, the guardian ad litem was an experienced attorney who actively participated in the trial. Recognizing that the juvenile court was not bound to follow the recommendations of the guardian ad litem, Guier v. Guier, 918 S.W.2d 940, 951 (Mo.App. W.D.1996), we note that here he recommended against terminating Mother's parental rights. In doing so, he concluded that the Juvenile Officer had failed to prove, by clear and convincing evidence, that either of the parents had abused the children or failed to protect them from abuse. He also noted his concerns about basing a termination on the children's testimony, especially since it was virtually "rote" and they refused to testify in detail about any harm they may have seen or sustained.
Termination of parental rights requires strict and literal compliance with the statutes. In the Interest of A.R.S., 609 S.W.2d 490, 491 (Mo.App. S.D.1980). It is only when grave and compelling reasons exist that parental rights should be severed. Id. The test is not whether the children would be better off in another home. Id. While the best interests of the children are always the primary concern, there must be sufficient proof of acts authorizing termination under the statutes before the court reaches the issue of the children's best interests. In the Interest of M.H., 859 S.W.2d at 896.
It has been said that the clear, cogent and convincing standard requires that the matter under consideration be established by the clearest of evidence, and upon testimony entirely exact and satisfactory. Mercantile Bank of Sikeston v. Moore, 935 S.W.2d 762, 766 (Mo.App. S.D.1996). We cannot conclude that this record demonstrates "clear, cogent and convincing" evidence of the existence of facts authorizing the termination of Mother's parental rights pursuant to § 211.447.2(2)(c). We are, therefore, compelled to agree with Mother's contention that there was insufficient evidence to support the termination of her parental rights, and we reverse the judgment to the extent that it did so. Reversal of the juvenile court's order terminating Mother's parental rights does not mean that physical custody of the children should forthwith be returned to her. See In the Interest of S-G., 779 S.W.2d 45, 56 (Mo.App. S.D.1989). The DFS should be permitted to retain physical custody of the children subject to any reasonable visitation rights by Mother which are deemed appropriate by the juvenile court. Physical custody should not be returned to Mother unless or until the juvenile court determines that the environment in which they will be living creates no reasonably foreseeable risk of harm to the physical or emotional well-being of each of the children.
The judgment is reversed to the extent that it terminated Mother's parental rights. The judgment is otherwise affirmed.
NOTES
[1] The court found that there was a lack of evidence that G.C. and V.L.C. were the children of Father, but it did terminate his parental rights as to A.M.C. and A.L.C. Father does not appeal.
[2] Statutory references are to RSMo 1994 unless otherwise indicated.
[3] We are hindered in our review of this case by the fact that a brief was not filed on behalf of the Juvenile Officer who filed the petitions to terminate and who was successful at trial. We are cognizant of cases which hold that there is no statute or rule that imposes a penalty for such a failure. Olsen v. Bernie's, Inc., 296 S.W.2d 3, 5 (Mo.1956). The failure to file a respondent's brief, however, is a practice which has been repeatedly condemned by the courts, and results in not only an imposition on the reviewing court, but leaves us dependent on the appellant's presentation and our own research. Scheble v. Missouri Clean Water Comm'n, 734 S.W.2d 541, 545 (Mo.App. E.D.1987). Such a failure is particularly egregious in a termination of parental rights case involving the best interests of children and the legal rights of parents. The termination of those rights is an awesome exercise of power by the State. In the Interest of J.A.J., 652 S.W.2d 745, 748 (Mo.App. E.D.1983). If the Juvenile Officer's belief that the legal relationship between a parent and child should be severed is strong enough to justify the filing of a petition and a trial of the issues, one would think that the same conviction would dictate the presentation of those facts and theories in response to an appeal. As a result of the failure of the Juvenile Officer to file a brief here, we are in the dilemma of needing to protect the best interests of the children, but at the same time, realizing that we are not to become an advocate for any party, including the Juvenile Officer. See Thummel v. King, 570 S.W.2d 679, 686 (Mo. banc 1978).
[4] Each of the four petitions referred to "her" in subparagraph 2(c) even when referring to the boy, G.C.
[5] No subparagraphs 2(a) or (b) appeared in the petitions. Paragraphs 2(c) and (d) are apparently taken from and based upon § 211.447.2(2)(c) and (d).
[6] The version of § 211.447.2(2) in effect when this case was tried read, in its entirety:

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
(a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or
(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development[.]
[7] This finding was in response to § 211.447.3 which provides:

3. When considering whether to terminate the parent-child relationship pursuant to subdivision (1), (2) or (3) of subsection 2 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
. . .
(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.