In the INTEREST OF A.M.C., A.L.C., G.C., and V.L.C., Children under seventeen years of age.

**Missouri Division of Family Services, Respondent,**

v.

**B.J.C., Appellant.**

**No. 24777.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 1, 2002.

Richard P. Edgington, Pelts, McMullan & Edgington, Kennett, MO, for Appellant.

Bruce Antrim, Dept. of Social Services, Div. of Legal Services, St. Louis, MO, for Respondent.

Before RAHMEYER, C.J., PARRISH, J., and MAUS, Sr.J.

PER CURIAM.

B.J.C. ("Mother") appeals from a judgment terminating her parental rights with reference to her natural children, A.M.C., born October 6, 1984; A.L.C., born March 29, 1987; G.C., born March 5, 1989; and V.L.C., born December 9, 1990. With two points relied on, Mother contends that

there was not clear, cogent and convincing evidence presented in support of the termination of her parental rights.

On September 23, 1997, the parental rights of G.C., Sr. ("Father") were terminated and the trial court found that "severe acts or recurrent acts of physical or sexual abuse had been committed toward [A.M.C.] and that [Father] knew of or participated in those acts thereby endangering the welfare of each child in the home." As a result of that same proceeding, Mother's parental rights were terminated and the trial court found that there was "clear, cogent and convincing evidence that she should have known of acts of physical, emotional or sexual abuse committed toward her children." *In re A.M.C.*, 983 S.W.2d 635, 637 (Mo.App. 1999). This Court reversed the September 1997 order with respect to Mother's parental rights, finding that there was no evidence in the record that she committed any of the specific acts or that she knew or should have known that any such acts were being committed by others. *Id.* at 637, 639.

In May 1999, the trial court approved a new treatment plan for Mother. Review hearings were held in February of 2000 and 2001, and no visitations between Mother and the children were allowed. On June 18, 2001, petitions to terminate the parental rights of Mother with respect to the four children were filed.

Within the petitions, the Missouri Division of Family Services (DFS) sought termination of Mother's rights based on § 211.447.2(1), RSMo 2000, (children had been in foster care for at least fifteen of the last twenty-two months); § 211.447.4(2), RSMo 2000, (children had been abused or neglected); and § 211.447.4(3), RSMo 2000, (children under trial court's jurisdiction for a period of one year, and conditions leading to the assumption of that jurisdiction still exist or conditions of a potentially harmful nature continue to exist).

Following a hearing on the matter, the trial court issued its findings, order and judgment on December 19, 2001. Of importance to this appeal, the trial court made the following findings of fact based on clear, cogent and convincing evidence.

1. There was no evidence presented that indicates that [Mother] committed any severe or recurrent acts of physical, emotional or sexual abuse toward the children. There was evidence from [Mother] that she was with the children "all the time," however this court does not take [Mother's] statement literally as three of the school children were of school age at the time that they came into care. While the finding in the previous termination of parental rights action against Mother suggests that she had no knowledge of the abuse of the children, this [c]ourt is concerned that [Mother] continues to hold the opinion that no abuse occurred despite a judgment against [Father] and considerable evidence to the contrary.

2. There was clear, cogent and convincing evidence that [Mother] has failed to provide [the children] with adequate food, clothing, and shelter in that she has failed to pay any support to the State of Missouri for their foster care. There was testimony that [Mother] believed herself to be employable. [Mother] testified that she received approximately four hundred seventy dollars ($470.00) in benefits from the United States Social Security Administration. This [c]ourt does not intend to suggest that [Mother] could have made anything but a negligible monthly contribution. She made no

payments at all, however, for the care of her children. [Mother] acknowledged that she would have to set aside some of her income if they were living with her.

3. The [c]ourt finds that, pursuant to Section 211.447(3), [the children] have been under the jurisdiction of this [c]ourt for at least one year; conditions that led to the assumption of jurisdiction still persist and conditions of a potentially harmful nature continue to exist with little likelihood that those conditions will be remedied at an early date so that the children may be reunified. [Mother] moved herself from her home which was next door to [Father] the same month as the first trial setting, and only two months prior to the trial of which this order is a result. [Mother] lived in the same dwelling, either with [Father] or within very close proximity to him for at least six years prior to her move. When [Mother] was served with the summons for this action she was with [Father]. She has been seen with him at court dates, family support team meetings and home visits despite concern voiced by the [c]ourt and the [DFS] that [Father] be prevented from having contact with the children. [Mother] refused to participate in sexual abuse counseling. She refused to even concede that any serious sexual or physical abuse was perpetrated on any of her children despite this [c]ourt's previous order in a termination of parental rights hearing stating that said abuse occurred.

a. [Mother] made substantial progress towards completing the individual requirements of the [c]ourt ordered treatment plan, however she made little or no progress on complying with the spirit of the treatment plan. [Mother] did obtain an evaluation by [Dr.] Marie Clark [of the Behavioral Science Institute, Inc., for the purpose of evaluating the treatment needs of Mother and the children and developing a treatment plan addressing any issues identified by Dr. Clark, including any issues of sexual abuse of the children], however, she did not comply with [Dr.] Clark's treatment recommendations. [Mother] asked [Father] to be evaluated by [Dr.] Clark. [Father] attempted but did not complete the evaluation. [Mother] maintained adequate housing, however she refused to allow the [DFS] to inspect her home on numerous occasions. [Mother] agreed to go to counseling, but refused to work on issues of sexual abuse. In February of 2001 [Mother] refused to continue work towards reunification.

b. The [DFS] was relieved of reasonable efforts in February of 2001 because [Mother] refused to cooperate any further with their efforts to reunify. This [c]ourt finds that their efforts were not complete at that time but that [Mother's] refusal to continue working towards reunification was inconsistent with establishing a permanent placement for [the children].

The judgment in a termination of parental rights case will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *In re R.J.B.*, 30 S.W.3d 868, 870 (Mo.App.2000). Due deference is given to the trial court's ability to assess the credibility of the witnesses. *A.M.C.*, 983 S.W.2d at 636. In our review,

we consider the facts and reasonable inferences therefrom in the light most favorable to the trial court's order. *R.J.B.*, 30 S.W.3d at 870.

■ The grounds for termination of parental rights must be shown by clear, cogent and convincing evidence. § 211.447.5, RSMo 2000. The termination must also be in the best interest of the children. *In Interest of F.M.*, 979 S.W.2d 944, 946 (Mo.App.1998). The clear, cogent and convincing standard of proof is met when the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. *In Interest of C.K.G.*, 827 S.W.2d 760, 765 (Mo.App. 1992). This standard of proof may be met although the trial court has contrary evidence before it. *Id.* As trier of fact, the trial court has authority to believe or disbelieve all, part or none of the testimony of the witnesses. *Id.*

■ Mother raises two points on appeal. The first is that the trial court erred in terminating her parental rights pursuant to § 211.447.4(2) because clear, cogent and convincing evidence was not presented establishing that she knew or should have known if any severe or recurrent acts of physical, emotional or sexual abuse had been committed toward any of her children or that she failed to provide her children with adequate food, clothing and shelter. Mother's second point is that the trial court erred in terminating her parental rights pursuant to § 211.447.4(3) because clear, cogent and convincing evidence was not presented establishing the conditions that led to the assumption of jurisdiction still persist or that the conditions of a potentially harmful nature continue to exist.[1]

1. Under § 211.447.4(2), RSMo 2000, the [DFS] may file a petition to terminate parental rights when a child has been abused or abandoned and the trial "court shall consider and make findings on the following conditions or acts of the parent: (a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control; (b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control; (c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed towards the child or any child in the family; or (d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development." Under § 211.447.4(3), RSMo 2000, the [DFS] may file a petition to terminate parental rights when a child has been under the jurisdiction of the trial court for one year, and the trial court "finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following: (a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms; (b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his [or her] circumstances or conduct to provide a proper home for the child; (c) A mental

We will address Mother's second point first. However, the analysis of this point must begin with one of the findings mentioned as part of Mother's first point. The trial court found that there was no evidence that indicated Mother knew or should have known of any severe or recurrent acts of physical, emotional or sexual abuse committed by Father toward the children. In her first point, Mother raises as a point of error that there was no clear, cogent and convincing evidence that she knew or should have known of such acts. However, the trial court agrees with her, as it specifically states that there was no clear, cogent and convincing evidence that she had any knowledge regarding the acts that were the basis of the termination of Father's parental rights.

Within that finding, after the trial court establishes that no evidence indicated Mother had knowledge of the acts at the time of the first termination proceeding, it expresses concern that Mother "continues to hold the opinion that no abuse occurred despite a judgment against [Father] and considerable evidence to the contrary." In its findings and discussion related to the basis for termination of her parental rights under § 211.447.4(3), RSMo 2000, the trial court focuses on Mother's continued contact with Father, refusal to acknowledge that he committed acts of abuse on her children and refusal to address issues of sexual abuse in counseling.

Thus, it is Mother's reaction and manner of handling the information regarding the determination by the trial court in the first proceeding that Father committed such acts and the subsequent concern expressed by the DFS and the trial court regarding any contact she or the children have with Father that represents the "conditions of a potentially harmful nature [that] continue to exist" and for which there is little likelihood "will be remedied at an early date so that the children may be reunified."

Mother testified that she did not believe that Father ever sexually molested any of the children. A DFS social worker testified that, during a court hearing, Mother stated that she would allow the children to see Father. As to Mother's refusal to participate in counseling related to sexual abuse issues, there was testimony that while she may have attended counseling sessions in which it was discussed, she would become angry and refuse to work on or work through the issues.

At a review hearing in February 2001, Mother refused all services until she received visitation with the children. Following that same review hearing, a court order relieved the DFS of making any further efforts to reunify the family; however, a DFS employee still attempted to arrange counseling sessions, but Mother refused all services relating to any further counseling, including that specifically associated with sexual abuse issues. The only service Mother requested was for a parent aide to help her clean her house.

In the time between the first termination proceeding and the second, there was evidence that Mother maintained frequent contact with Father. He was present at several home visits in 2000 and 2001, and he attended a family support team meeting with her in July of 2001. Father was also present with Mother when she

condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control; (d)

Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control."

was served with the petitions to terminate her parental rights. Up until two months prior to the second termination hearing, Mother lived in a house on the front part of a lot and Father lived in a mobile home on the back of the same property.

There was evidence that Mother complied with some of the requirements of the court ordered treatment plan. While she completed an evaluation with Dr. Clark, Mother refused to comply with Dr. Clark's treatment recommendations, which included participation in vocational training and a disability assessment. The plan also required that, if Mother continued to see Father, he be evaluated by Dr. Clark as well. Father saw Dr. Clark but did not complete an evaluation. Mother met the plan's requirements in terms of obtaining a drug and alcohol assessment, supplying the trial court with an SSI disability determination and maintaining adequate housing. However, on several occasions, a DFS worker was not allowed to inspect the home.

There was clear, cogent and convincing evidence presented under which the trial court could have determined that Mother failed to rectify the conditions that led to the trial court's jurisdiction and that she made little or no progress in complying with the overall terms of her treatment plan. In particular, Mother failed to complete or make progress in counseling sessions meant to address sexual abuse issues. *See In re J.K.*, 38 S.W.3d 495, 501 (Mo.App.2001). She also refused services relating to further counseling sessions on any issue. While Mother may have made some effort to change her level of contact with Father after the petitions for termination of parental rights were filed, it is within the trial court's discretion to assign more weight to Mother's past conduct. *See In re J.M.L.*, 917 S.W.2d 193, 196

(Mo.App.1996). "The past provides vital clues to the present and future." *Id.*

 Therefore, the evidence supported the trial court's decision to terminate Mother's parental rights under § 211.447.4(3). If either ground for termination relied on by the trial court is supported by clear, cogent and convincing evidence, we may affirm without reaching the merits of any other grounds. *J.K.*, 38 S.W.3d at 499. Thus, we need not address Mother's first point related to § 211.447.4(2).

The judgment is affirmed.