Judith Cadle WELLS, Margaret Cadle Lindquist, James A. Cadle, a/k/a Aaron N. Cadle, and Douglas L. Cadle, Plaintiffs–Appellants,

v.

Randolph E. BRYANT, Individually and as Successor Trustee under a certain Living Trust Agreement of Nan B. Cadle, Letha Bandel, The Boatmen's National Bank of Springfield, and Leland C. Bussell as Personal Representative de bonis non administratis of the Estate of Nan B. Cadle, Deceased, Defendants–Respondents.

No. 16030.

Missouri Court of Appeals, Southern District, Division One.

Nov. 27, 1989.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 18, 1989.

Application to Transfer Denied Feb. 13, 1990.

John D. Compton, Springfield, for plaintiffs-appellants.

Steve Garner, Strong & Associates, Springfield, for defendants-respondents Bryant and Bandel.

Lincoln J. Knauer, Farrington & Curtis, Springfield, for defendant-respondent Boatmen's.

GREENE, Judge.

Plaintiffs appeal from an order issued that sustained defendants' motion for summary judgment on all counts of plaintiffs' four-count petition. We affirm.

Summary judgment is only appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 74.04(c).[1] The affidavits and accompanying materials filed in support of a motion for summary judgment, if not denied by the opposing party, stand admitted and are considered as a part of the record. We review the record in the light most favorable to the appellants, and an order of summary judgment will not be set aside on

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

review, if it is supportable on any established legal theory. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243–244 (Mo. banc 1984).

The uncontroverted facts of this case, as gleaned from the record, are as follows. Judith Cadle Wells, Margaret Cadle Lindquist, Aaron N. Cadle and Douglas L. Cadle are the natural children of James H. Cadle (James), deceased. In 1976, the marriage of James and the plaintiffs' natural mother was dissolved by court decree. James married Nanna Bryant (Nan) in February of 1982. On August 3, 1982, James and Nan made and executed mutual and reciprocal wills in which each provided that on the death of the testator, all of the real and personal property of the testator, with the exception of certain specifically designated items of personal property that would go to named persons, would go to the surviving spouse, with the proviso that if the testator was predeceased by his or her spouse, the entire estate would go to the four children of James and to Nan's son by a previous marriage, Randolph E. Bryant (Randy), share and share alike. There was nothing recited in the wills to the effect that the testators intended that the wills be irrevocable, and there is nothing in the record to show that either James and/or Nan executed a separate written contract that showed that it was their intent that the wills be irrevocable.

James died on March 30, 1983. His will was probated, and all of his estate, both real and personal, with the exception of the designated personal property items previously mentioned that are not relevant here, passed to his surviving spouse, Nan. On September 25, 1984, Nan executed a new will, as well as a revocable intervivos trust that would become irrevocable upon her death. These two instruments, when considered together, provided, except for specific bequests of $5,000 to Letha Bandel, Nan's sister, and $1,000 to each of the four children of James, that Randy and his children were the sole beneficiaries of the trust and the will. Nan died in mid-December 1985. A short time later, utilizing powers granted him in the will and trust agreement, Randy began transferring real estate

from Nan's estate to himself, and later encumbered some of the real estate through a deed of trust to Boatmen's National Bank of Springfield (Boatmen's) as security for the guaranty of a small business administration guaranteed loan in the sum of $140,000.

On March 7, 1986, plaintiffs filed this action in four counts. In addition to the facts previously noted, each count sought an order "[d]eclaring that defendant Randolph E. Bryant holds an undivided four-fifths (⅘) interest in all property received from his mother … since August 3, 1982 … and all such property to be received under the Will … and the Living Trust … in trust for plaintiffs."

In the second count plaintiffs allege a constructive trust was created because Nan was in a confidential relationship to James when the previously described agreement was made, and Nan received property pursuant to that agreement. The third count alleges a constructive trust existed because the disposition of James' property by will was procured by Nan's fraud "in that [she] agreed to the terms and conditions aforesaid and then failed to perform said terms…." Count four seeks to vacate the specific bequest to Letha Bandel and declare a lien on Randy's real estate in favor of plaintiffs superior to one held by Boatmen's. Boatmen's has a security interest in the real estate, evidenced by Randy's deed of trust.

Motions for summary judgment were filed. The motion of Randy and Letha Bandel asserted that they were entitled to judgment because all counts of the petition are dependent upon a fact which plaintiffs did not allege and cannot prove, "namely a contract not to revoke the reciprocal will" which complies with the provisions of § 474.155. The motion was accompanied by a copy of the mutual wills, Nan's last will and revocable trust, interrogatories to plaintiffs and the answers, and the deposition of the attorney who drafted the mutual wills.

All plaintiffs filed identical answers to interrogatories admitting they were unable

to locate any written agreement executed before, on, or after August 3, 1982, in which Nan and James agreed not to revoke a will "other than the 'mirror' wills."

The deposition of the attorney who drew the mutual wills disclosed that James gave him telephone instructions regarding the drafting of the wills. James was concerned, since he and Nan were planning a trip, that he and Nan did not have wills disposing of their assets, as they wanted them to be disposed, should they die simultaneously. James wanted a will whereby all of the children, both his and Nan's, would divide the assets equally. The attorney stated that he told James that "since they were both bringing assets into the marriage and they had children that were not children of the marriage that they should enter into an agreement which fully disclosed all of their assets and was in essence an agreement to bind the will as far as what happened on a simultaneous death or when the survivor died." When James and Nan came into the attorney's office to approve and execute the wills, the attorney "opened up the question again about the post-nuptial agreement." James' reply was, " '[W]e'll get back with you on that.' " There had been a prior discussion and the attorney was left with the impression that James and Nan were going to bring the attorney the information needed "so that [he] could perhaps work on this post-nuptial agreement while they were gone." The attorney discussed the need for a separate agreement with James on four separate occasions, the last being a social gathering. However, the attorney was never supplied with the requested information to enable him to prepare the document.

On this record the trial court entered summary judgment in favor of all defendants and against plaintiffs on all counts. This appeal followed.

Regardless of how plaintiffs characterized their claims in the four counts of their petition, common dispositive elements remain. The claims asserted in each count of the petition are dependent upon proof of an irrevocable agreement by James and Nan to make a particular testamentary disposition of their property, which Nan breached when, after the death of James, she executed a new will and trust agreement that varied the terms by which her property would be distributed upon her death from those expressed in her previous will.

■■■ Section 474.155 provides:

A contract to make a will or devise, to revoke or not to revoke a will or devise, or to die intestate, if executed after January 1, 1981, can be established only by

(1) Provisions of a will stating material provisions of the contract;

(2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

(3) A writing signed by the decedent evidencing the contract.

The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

The statute changed the substantive law which permitted enforcement of oral agreements not to revoke reciprocal wills. *L.G. v. F.G.H.*, 729 S.W.2d 634, 640 (Mo.App. 1987). While plaintiffs argue that § 474.155, effective January 1, 1981, is in derogation of common law and should be strictly construed, a more fundamental rule of law is that where the language of a statute is plain and unambiguous, construction of that statute is not permitted, *Matter of Estate of Thomas*, 743 S.W.2d 74, 76 (Mo. banc 1988), as the courts have no business foraging among the rules of judicial construction to try to create an ambiguity where none exists. Plaintiffs do not point to any provision of the statute they claim is ambiguous, and we find none.

■■■ The plain words of the statute dictate that the only method of establishing a contract to make, not make, revoke or not revoke a will is to produce a writing containing the material provisions of the contract, along with express reference in the will to the contract or an independent writing signed by the decedent evidencing the contract. Since the wills in question do not incorporate any such contract, and since plaintiffs failed to produce, when requested

during discovery, any written contract signed by Nan not to revoke her previous will, they failed in proving their claim.

Since there is no language in the statute that limits its application to actions at law, our holding applies to all of the arguments on both legal and equitable grounds expressed by plaintiffs in their pleadings and briefs in support of their contention that the statute does not control their claim of an oral contract not to revoke a will that would have given them an interest in Nan's estate.

The trial court's order granting summary judgment is affirmed.

HOGAN, C.J., and CROW, P.J., concur.