Edward Lawrence MORAN and Richard Alan Moran,
Respondents,

v.

Kathleen Marie KESSLER and Sandra Jean Kessler, Individually, and as Personal Representatives of the Estate of Joseph D. Kessler, Deceased, Appellants.

No. WD 57873.

Missouri Court of Appeals, Western District.

Jan. 16, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2001.

Application to Transfer Denied April 24, 2001.

Mike Greenwell, Shelbina, for appellant.

David A. Masters, Macon, for respondent.

Before HOLLIGER, P.J.,
LOWENSTEIN and NEWTON, JJ.

NEWTON, Judge.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute.[1] Anna Moran Kessler (Anna) and Joseph Kessler (Joseph) had been married for over twenty years. On July 11, 1995, they executed mutual and reciprocal wills in which they made provisions for the children from their earlier marriages. The wills acknowledged that Anna and Joseph had an oral agreement directing distribution of their separate and joint property when they died. Under that oral agreement, Anna's separate property was to go to her sons, respondents Edward and Richard Moran; Joseph's separate property was to go to his daughters, appellants Kathleen and Sandra Kessler. Further, Anna and Joseph's joint property was to remain in the possession and control of the survivor, and, upon the survivor's death, one-half was to be distributed to Edward and Richard Moran and the other half to Kathleen and Sandra Kessler. The mutual and reciprocal wills devised the property according to Anna and Joseph's prior oral agreements. The wills contained no provisions about revocation.

The same attorney advised Anna and Joseph and drafted their reciprocal wills.

During the process, the attorney informed them that they could enter into a postnuptial agreement that would make their wills irrevocable. The attorney also advised them that they could execute a joint will that could not be revoked or modified. Anna and Joseph rejected those options because, according to their attorney, "each had great confidence in the other one."

On August 3, 1995, Anna died.

On August 2, 1996, Joseph executed a new will that revoked his reciprocal will and provided for the entirety of his estate to go to his children, Sandra and Kathleen Kessler.

On September 18, 1996, Joseph died.

Joseph's last will was admitted to probate, and the Kessler children were appointed personal representatives. Appellants then took control over all of the property which Joseph owned at the date of his death, including property jointly titled in the names of Joseph and Anna prior to and at the time of her death. The Moran children sued the Kessler children seeking specific performance of the contract that the reciprocal will embodied. The circuit court granted partial summary judgment[2] for the Moran children, and this appeal follows.

## STANDARD OF REVIEW

In reviewing a grant of partial summary judgment, we examine the entire record to determine whether there is any issue of material fact and whether the

---

1. Appellants clearly state on page 7 of their opening brief that "Appellants do not dispute the findings of fact of the trial court, but rather appeal on the basis of the court's legal conclusions as to the application of § 474.155 RSMo to said facts."

2. In this case, there were six counts in the petition. Count I identified the cause of action and the remaining counts were basically alternative forms of relief as compared to alternative theories of recovery. The trial court correctly issued the "partial summary judgment" pursuant to Rule 74.01(b) of the Missouri Rules of Civil Procedure.

moving party was entitled to judgment as a matter of law.[3] We will review the record in the light most favorable to the party against whom summary judgment was entered.[4] We accord the non-movant the benefit of all reasonable inferences from the record.[5] The propriety of summary judgment is purely an issue of law.[6] Our review is essentially *de novo*.[7]

The appellants contend that the circuit court erred in granting partial summary judgment which found that the mutual and reciprocal wills established an enforceable contract to make a will or devise in compliance with Section 474.155, RSMo 1994. They allege that the provisions in the wills were merely *the result* of a contract to make a will or devise. They claim that Joseph did not breach a contract to make a will or devise because the prior oral agreements were performed when Joseph and Anna executed the mutual and reciprocal wills of July 11, 1995. They also claim that the central issue is the revocability of Joseph's July 1995 will.

## LEGAL ANALYSIS

▮▮▮ It is well settled that reciprocal and mutual wills are as ambulatory in nature as ordinary wills, if not founded on or embodying any contract.[8] "A contract to make mutual wills to remain unrevoked at the death of the parties is valid and enforceable if fair and just, definite and certain in its terms and as to the subject matter, and based upon sufficient consideration."[9] "The mutual promises of the parties regarding the disposition of the property on the death of their survivor can be sufficient consideration to support an enforceable contract after the death of the first to die."[10]

▮▮▮ "A contract to make a will or devise, to revoke or not revoke a will or devise . . . can be established only [under Section 474.155]."[11] The standard of proof for a contract to make a will is clear, cogent and convincing evidence.[12] "[T]o attribute to a will the quality of irrevocability demands the most indisputable evidence of the argeement (sic) which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof."[13]

▮▮▮ Whether we term the issue "a contract to not revoke" (as suggested by appellants) or "a contract to make a will" (as suggested by respondents) is largely insignificant: "an agreement not to revoke

3. *Dial v. Lathrop R–II School Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994); Rule 74.04(c)(3).

4. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

5. *Id.*

6. *Id.*

7. *Id.*

8. *Plemmons v. Pemberton*, 346 Mo. 45, 139 S.W.2d 910, 914 (Mo. banc 1940).

9. *Porter v. Falknor*, 895 S.W.2d 187, 189 (Mo. App. E.D.1995) (citing *Plemmons*, 139 S.W.2d at 914).

10. John A. Borron, Jr., 5 Missouri Practice, *Probate Law and Practice* § 47 at 111 (3d ed.1999) (citing *Wimp v. Collett*, 414 S.W.2d 65 (Mo.1967); *Malone v. Spangler*, 606 S.W.2d 218 (Mo.App.1980); *Arrington v. Westport Bank*, 577 S.W.2d 166 (Mo.App. 1979)).

11. § 474.155.

12. *Estate of Cates v. Brown*, 973 S.W.2d 909, 914 (Mo.App. W.D.1998) (citation omitted).

13. *Wimp v. Collett*, 414 S.W.2d 65, 70 (Mo. 1967) (alteration in original) (citation omitted).

a will is, in effect, the same as an agreement to make a will",[14] and both are held to the same standard of proof under Section 474.155.[15] To prove the existence of such contracts, Section 474.155 provides:

> A contract to make a will or devise, to revoke or not revoke a will or devise, or to die intestate, if executed after January 1, 1981, can be established only by
>
> (1) Provisions of a will stating material provisions of the contract;
>
> (2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
>
> (3) A writing signed by the decedent evidencing the contract.
>
> The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

When interpreting statutes, our primary responsibility is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning.[16] The legislature is "presumed to have intended what the statute says; consequently, when the legislative intent is apparent from the words used and no ambiguity exists, there is no room for construction." [17] Thus, in order to determine the legislature's intent and ascertain whether the statute is intended to be in the disjunctive, we will look to the plain and ordinary meaning of the language used in the statute. Arguably, the presence of "or" after subsection 2 and the absence of "or" after subsection 1 might be indicative of the legislature's requiring "[p]rovisions of a will stating material provisions of the contract" *and either* "[a]n express reference in a will to a contract and extrinsic evidence proving the terms of the contract" *or* "[a] writing signed by the decedent evidencing the contract." One case in particular seems to have suggested as much.[18] However, this court has unmistakably maintained that "Section 474.155 provides for only *three* methods for establishing a contract to

---

**14.** *Rookstool v. Neaf,* 377 S.W.2d 402, 406 (Mo.1964) (citations omitted). The full quote is "an agreement not to revoke a will is, in effect, the same as an agreement to make a will *and must be in writing." Id.* (emphasis added). However, as will be discussed, the agreement is governed by Section 474.155, which, according to the Committee Comment by the legislative committee that adopted this section of the Uniform Probate Code in 1980, does not require the agreement to be in writing. Francis M. Hanna, 4 MISSOURI PRACTICE, *Probate Code Manual* § 474.155 at 552 (2d ed.2000). The statute only requires that the contract be established, i.e. "proven, verified, shown, substantiated, or backed up," *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 778 (1971), by any of the three methods provided, each of which demands a writing. Whether the agreement is oral or written, it is governed by Section 474.155. *Estate of Williams v. Williams,* Nos. WD 55608, WD 56048, 1999 WL 292625, at *7 (Mo.App. W.D. Apr.11, 1999), *reversed on other grounds* 12 S.W.3d 302 (Mo. banc 2000). Such oral contracts

are enforceable. *Clark v. Cordry,* 69 Mo.App. 6, 9 (1897).

**15.** *See Estate of Williams,* 1999 WL 292625, at *7.

**16.** *State v. Knapp,* 843 S.W.2d 345, 347 (Mo. banc 1992); *State v. Williams,* 24 S.W.3d 101, 115 (Mo.App. W.D.2000).

**17.** *State v. Haskins,* 950 S.W.2d 613, 615 (Mo. App. S.D.1997).

**18.** One court opined:

> The plain words of the statute dictate that the only method of establishing a contract to make, not make, revoke or not revoke a will is to produce a writing containing the material provisions of the contract, *along with* express reference in the will to the contract *or* an independent writing signed by the decedent evidencing the contract. *Wells v. Bryant,* 782 S.W.2d 721, 723 (Mo. App. S.D.1989) (emphasis added).

make a will." [19]   A closer look at subsections 1 and 2 supports this conclusion: it would be unnecessary to use extrinsic evidence to prove the terms of the contract if the provisions of the will state the material provisions of the contract. Therefore, we conclude that the plain and ordinary meaning the statute provides for three methods of establishing such a contract.

The trial court entered summary judgment for the Moran children and ordered specific performance of a contract to make a will or devise, established in accordance with subsections 1, 2, and 3 of Section 474.155. The court concluded that (1) the material provisions of the contract were stated in two provisions of their wills, (2) that there was express reference in their wills to a contract and extrinsic evidence proved the terms of the contract, and (3) that the wills constituted writings signed by the decedents evidencing the contract. As a result, the court concluded that Anna had fully performed her obligations under the contract prior to her death by having the agreed-upon provisions as part of her will when it became effective at her death, but that Joseph had breached the contract when he revoked his mutual and reciprocal will by executing a new will that did not dispose of the Anna and Joseph's joint property in accordance with their contract as evidenced by the wills of July 11, 1995.

Appellants contend that there must have existed a written contract to not revoke for respondents to prevail. Appellants rely on *Wells v. Bryant*[20] for their position. In that case, as here, Husband and Wife executed mutual and reciprocal wills. Each provided that on the death of the testator, all of the real and personal property of the

testator (except for certain specifically designated items of personal property) would go to the surviving spouse. Additionally, the entire estate of the surviving spouse would be distributed equally to the four children of Husband and to Wife's son by a previous marriage, Son. Eighteen months after Husband's death, Wife executed a new will and a revocable inter vivos trust that became irrevocable upon her death. The two instruments considered together made Son and his children the sole beneficiaries of the trust and the will, except for specific bequests of $5,000 to Wife's sister, and $1,000 to each of the four children of Husband. Wife died fourteen months later.[21]

The court stated that the claims of Husband's children depended upon proof of an irrevocable agreement between Husband and Wife to make a particular testamentary disposition of their property, which Wife breached when, after the death of Husband, she executed a new will and trust agreement that varied the terms by which her property would be distributed upon her death from those expressed in her previous will.[22] The court found that there was nothing recited in the wills to the effect that the testators intended that the wills be irrevocable, and that there was nothing in the record to show that either Husband or Wife executed a separate written contract that showed that it was their intent that the wills be irrevocable. Accordingly, in the absence of any agreement the court held that the children of Husband could not challenge Wife's revocation of the reciprocal will.

*Wells* is not dispositive. Conspicuously absent from the *Wells* case was any indicia

**19.** *Estate of Williams,* 1999 WL 292625, at *7–*8 (emphasis added).

**20.** 782 S.W.2d at 721.

**21.** *Id.* at 722.

**22.** *Id.*

of *an agreement.* In contrast, both of the wills here read, in pertinent part:

> *I agreed* that all money and property ... that each of us owned prior to and at the time of our marriage to each other would remain the separate property of the person owning it, and that [it would pass to their respective children].... *This agreement was oral, but we have both reaffirmed it many times since our marriage, including very recently.*

> [S]ince our marriage to each other, [we] have acquired [joint property]. With respect to that property, both real and personal, *it is our agreement that,* upon the death of the first of us, the survivor may retain possession and control of that property, use it for his or her own benefit, support, maintenance and comfort, and then, upon the death of the last of us to die, what remains of that property, and any increase therefrom, would go and be distributed one-half [to the sisters and one-half to the brothers]. *This agreement was also oral, but it also has been reaffirmed many times, including recently.*

(emphasis added).[23] Furthermore, the Committee Comment states that the stat-ute requires "contracts respecting succession to either land or chattels to be in writing *or referred to in the will.* ..."[24] Clearly, then, such contracts may be oral so long as they satisfy Section 474.155.

As the circuit court found, the parties had agreed upon the disposition of their separate and joint property, and that agreement was outlined in the wills. The circuit court found that a contract "to make a will or devise, revoke or not revoke will or devise" was established in accordance with Section 474.155. We agree.

With regard to the first subsection of the statute, the mutual and reciprocal wills that Joseph and Anna executed clearly stated that their wills embodied their prior oral agreements. Each will contained the material provisions of their contract—that the children would receive the separate property of their parents, and that all four of the children would split the joint property upon the death of the surviving spouse.[25] Their wills clearly and convincingly embodied an agreement as to how they wished their property to be disposed upon each other's death. For the agreement to be enforceable, it must either dispose of the property as provided within the agreement, or it must be an agreement to not revoke the wills.[26] In this case, Joseph

---

**23.** Although not germane to our discussion of the establishment of a contract under Section 474.155(1), another distinguishing feature of *Wells* is that the decedents neglected to execute a post-nuptial agreement; when Husband and Wife were presented with the issue of a post-nuptial agreement, Husband replied, " '[W]e'll get back with you on that.' " In this case, however, the lawyer who drafted Joseph's and Anna's wills stated that "they didn't think that was necessary, that they didn't, each of them had confidence that the other would keep their word. And I also talked to them, there is such a thing as you know as a Joint Will, which sometimes in the preamble of a Joint Will recites a contract at the beginning of it. And I talked about that,

and they said they didn't think that was necessary, that each had great confidence in the other one." This distinction might have been significant if we were evaluating the wills under Section 474.155(2).

**24.** § 474.155, Committee Comment (emphasis added), *in* Francis M. Hanna, 4 Missouri Practice, *Probate Code Manual* § 474.155 at 552 (2d ed.2000).

**25.** *See* § 474.155(1).

**26.** *Shackleford v. Edwards,* 278 S.W.2d 775, 779 (Mo.1955).

and Anna clearly had an agreement to dispose of their properties in a particular fashion. A husband and wife are free to agree upon such matters.[27]

The circuit court concluded that the evidence was sufficient to establish a contract to make a will. The parties agree that no dispute of material fact exists. Because we agree that the provisions in Joseph's and Anna's wills (quoted above) state the material provisions of their contract, respondents were entitled to judgment as a matter of law, and we affirm the circuit court's grant of partial summary judgment.

## CONCLUSION

■ If the trial court's grant of summary judgment can be sustained on any theory as a matter of law, we cannot reverse.[28] Because we agree with the trial court that a contract was established pursuant to Section 474.155(1), and because the statutory provisions are alternate bases of establishing a contract, it is unnecessary for us to review the contract's establishment under the other two subsections.

■ We are mindful that "[t]he execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills."[29] We do not presume that a contract to make a will was created solely on the basis of the execution of Joseph's and Anna's mutual wills. Rather, the existence of a contract was clearly, cogently, and convincingly estab-

lished by the provisions of their wills in accordance with Section 474.155(1).[30]

Affirmed.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.

---

**27.** *Id.* at 781.

**28.** *Rocha v. Metropolitan Prop. and Cas. Ins. Co.,* 14 S.W.3d 242, 245 (Mo.App. W.D.2000).

**29.** § 474.155; *see Shackleford,* 278 S.W.2d at 779.

**30.** *See Estate of Cates,* 973 S.W.2d at 914.