Jeana JACKSON, et al., Plaintiffs–
Appellants,

v.

WILLIAMS, ROBINSON, WHITE & RI-
GLER, P.C., John Williams, and Ellen
Moore, Defendants–Respondents.

No. 28041.

Missouri Court of Appeals,
Southern District,
Division Two.

July 30, 2007.

Gary A. Growe and Andrew J. Scavotto, Blumenfeld, Kaplan & Sandweiss, P.C., Clayton, for Appellant.

Nicole L. Sublett, Edward C. Clausen, Carson & Coil, P.C., Jefferson City, and Dan L. Birdsong, Thomas, Birdsong & Mills, P.C., Rolla, for Respondent.

PHILLIP R. GARRISON, Judge.

Jeana Jackson, et al. ("Plaintiffs") appeal from the trial court's judgment dismissing their petition against Williams, Robinson, White & Rigler, P.C. ("the law firm"), John Williams ("Williams"), and Ellen Moore ("Ellen")[1] (collectively referred to as "Defendants"). We affirm.

Plaintiffs' petition alleged the following. Ellen and Robert Moore ("Robert") were married and had children from previous marriages. No children were born of their marriage to each other. Plaintiffs are the natural children of Robert.

Robert and Ellen contacted the law firm and hired Williams to provide estate planning, probate and trust related legal counsel and services. In October 1994, Robert and Ellen executed mutual wills drafted by Williams. Robert's will, Article III stated, "[i]t is the intention of [Ellen] and [Robert] that assets titled in our separate names shall pass directly to our own respective children (excepting my daughter Christina Moore) upon our respective deaths and that assets titled in our joint names shall pass to the survivor of us and upon the death of the survivor shall pass one-half to [Robert's] children (excepting my daughter Christina Moore) and one-half to the children of [Ellen]." Article III of Ellen's will contained the exact same provisions as Robert's will.

On July 9, 2003, Robert passed away. On July 28, 2003, Ellen placed the joint assets into a trust, and revoked her original will by executing a new will, also prepared by Williams. The new will does not name Plaintiffs as beneficiaries and "provides only for [Ellen's children] to receive the benefit of her estate[.]"

On August 18, 2003, Williams filed on behalf of Ellen an "Application for Probate of Will and Codicil" in the Probate Division of the Circuit Court of Phelps County. On January 3, 2006, Plaintiffs filed a petition for professional negligence and breach of contract against Defendants. Count I of the two-count petition alleged that as the result of Williams' negligence, Plaintiffs were deprived of their rightful inheritance as was set out in the "Last Will & Testament" of Robert. Count II alleged that

---

1. For the purposes of clarity, we refer to those parties with surnames in common by their first names. No disrespect is intended.

Ellen breached her agreement with Robert that their assets would be divided between their children equally, upon her death, by executing a new will, which provided only for her children. Defendants filed separate motions to dismiss Plaintiffs' petition for failure to state a claim. The trial court granted those motions and entered its judgment dismissing Plaintiffs' petition for failure to state a claim upon which relief can be granted. This appeal followed.

■ Plaintiffs bring two points on appeal. For the sake of clarity, we will first address Plaintiffs' second point, which alleges that the trial court erred in dismissing their petition, because Count II stated a claim for breach of contract. Specifically, Plaintiffs maintain that the language of the mutual wills of Ellen and Robert established a contract, pursuant to Section 474.155,[2] which Ellen breached by revoking her original will. We disagree.

Our review of the trial court's grant of a motion to dismiss is de novo. *Moynihan v. Gunn*, 204 S.W.3d 230, 232–33 (Mo.App. E.D.2006). When reviewing the dismissal of a petition for failure to state a claim, we treat the facts contained in the petition as true and construe them liberally in favor of the plaintiff. *Id.* at 233. Our review is solely a test of the adequacy of the petition. *Hertz Corp. v. Raks Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo.App. E.D. 2006). "[T]he petition is reviewed in almost an academic manner to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in the case." *Id.*

■ To recover for breach of contract, a plaintiff must plead the following elements: (1) the existence of an enforceable contract between the parties to the action; (2) mutual obligations arising under its terms;

(3) the party being sued failed to perform obligations imposed by the contract; and (4) the party seeking recovery was thereby damaged. *Superior Ins. Co. v. Universal Underwriters Ins. Co.*, 62 S.W.3d 110, 118 (Mo.App. S.D.2001).

■ "It is well settled that reciprocal and mutual wills are as ambulatory in nature as ordinary wills, if not founded on or embodying any contract." *Moran v. Kessler*, 41 S.W.3d 530, 533 (Mo.App. W.D. 2001). "A contract to make mutual wills to remain unrevoked at the death of the parties is valid and enforceable if fair and just, definite and certain in its terms and as to the subject matter, and based upon a sufficient consideration." *Porter v. Falknor*, 895 S.W.2d 187, 189 (Mo.App. E.D.1995). The essential terms of the contract must be sufficiently definite to enable the court to give them exact meaning. *Id.*

Section 474.155 provides that a contract not to revoke a will can be established only by: "(1) Provisions of a will stating material provisions of the contract; (2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) A writing signed by the decedent evidencing the contract." That section further provides that, "[t]he execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills." Section 474.155. Plaintiffs' petition alleges that "[t]he wills executed by [Robert] and [Ellen] ... clearly, cogently, and convincingly established an agreement for the disposition of their assets upon their death."

In *Moran*, the court determined that the language of a husband and wife's mutual and reciprocal wills established a contract pursuant to Section 475.155(1). 41 S.W.3d

**2.** All statutory references are to RSMo (2000), unless otherwise indicated.

at 537. The wills in question contained, in pertinent part, the following language:

> With respect to that property, both real and personal, *it is our agreement that,* upon the death of the first of us, the survivor may retain possession and control of that property, use it for his or her own benefit, support, maintenance and comfort, and then, upon the death of the last of us to die, what remains of that property, and any increase therefrom, would go and be distributed one-half [to the sisters and one-half to the brothers]. *This agreement was also oral, but it also has been reaffirmed many times, including recently.*

*Id.* at 536 (alterations in original). The court explained that, "[e]ach will contained the material provisions of [husband and wife's] contract-that the children would receive the separate property of their parents, and that all *four of the children* would split the joint property upon the death of the surviving spouse." *Id.*

In *Porter,* a husband and wife executed a joint will which provided, in pertinent part that, "[i]t is our *mutual desire* that the survivor execute a New Will leaving all property held by the survivor to our child and our niece to share and share alike and equally." 895 S.W.2d at 188. The court found that the phrase "our mutual desire" was insufficient to support a finding there was a contract to make a will. *Id.* at 190.

In the present case, the mutual wills of Ellen and Robert provided, in pertinent part, that, "[i]t is the *intention* of [Ellen] and [Robert] that assets titled in our separate names shall pass directly to our own respective children (excepting daughter Christina Moore) upon our respective deaths and that assets titled in our joint names shall pass to the survivor of us and upon the death of the survivor shall pass one-half to [Robert's] children (excepting my daughter Christina Moore) and one-half to the children of [Ellen]." (emphasis added).

Plaintiffs argue that the language of the mutual wills established a valid contract pursuant to Section 474.155. We disagree. The wills in the present case use the term "intention." An intention is "[t]he willingness to bring about something planned or foreseen[,]" Black's Law Dictionary 826 (8th ed.2004), or "a determination to act in a certain way." Merriam–Webster's Collegiate Dictionary 651 (11th ed.2005). Intentions are subject to change at any time. Such language is not definite or certain and is more akin to the language used in *Porter.* Therefore, we find that the language used in the mutual wills in this case fails to satisfy the requirement of Section 474.155(1), that the provisions of a will state the material provisions of a contract not to revoke the will.[3] The trial court did not err in dismissing Count II of Plaintiffs' petition. This point is denied.

■ In their first point, Plaintiffs allege that the trial court erred in dismissing their petition, because Plaintiffs stated a claim for professional negligence on the part of Williams in drafting the mutual wills. We disagree.

■ To state a claim for legal malpractice, a plaintiff must allege facts sufficient to support the following elements: (1) the existence of an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; and (4) damages to the plaintiff. *Fox v. White,* 215 S.W.3d 257, 260 (Mo.App. W.D.2007).

---

**3.** Plaintiffs do not allege any facts that would give rise to a contract not to revoke under subsections (2)–(3).

■ "[T]he first element of a legal malpractice action may be satisfied by establishing as a matter of fact either that an attorney-client relationship exists between the plaintiff and defendant or an attorney-client relationship existed in which the attorney-defendant performed services specifically intended by the client to benefit plaintiffs." *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 628–29 (Mo. banc 1995).

■ The question of legal duty of attorneys to non-clients will be determined by weighing the following factors: (1) the existence of a specific intent by the client that the purpose of the attorney's services were to benefit the plaintiffs; (2) the foreseeability of the harm to the plaintiffs as a result of the attorney's negligence; (3) the degree of certainty that the plaintiffs will suffer injury from attorney misconduct; (4) the closeness of the connection between the attorney's conduct and the injury; (5) the policy of preventing future harm; and (6) the burden on the profession of recognizing liability under the circumstances. *Id.* at 629. "[T]he ultimate factual issue that must be pleaded and proved is that an attorney-client relationship existed in which the client specifically intended to benefit the plaintiff." *Id.* at 628.

■ We first observe that the petition avers that "Williams ... breached [his] professional duty and standard of care to [Robert] by failing to protect his interests and his intention as set forth in ... his Last Will & Testament." Plaintiffs provide no authority explaining why they would have standing to bring a claim of legal malpractice for breach of a duty owed to Robert. However, we note that Section 473.270 authorizes the executors or administrators of a decedent's estate to bring a cause of action belonging to the decedent. "A decedent's estate can only act by and through the decedent's personal representative." *Aufenkamp v. Grabill,* 112 S.W.3d 455, 460 (Mo.App. W.D.2003) (quoting *Estate of Lemaster v. Hackley,* 750 S.W.2d 692, 694 (Mo.App. W.D.1988)). Plaintiffs do not allege in their petition that they are the personal representatives of their father's estate, or that Williams owed any duty to Plaintiffs as intended beneficiaries of the mutual wills.

■ We also note that, central to a claim of negligence is the establishment of injury. *Baugher v. Gates Rubber Co., Inc.,* 863 S.W.2d 905, 913 (Mo.App. E.D.1993). "A cause of action for negligence does not arise until plaintiff suffers an injury. Until a cause of action accrues, its owner does not have a present right to institute and maintain an action or suit." *Id.* (internal citation omitted).

■ Here, Plaintiffs' petition alleges that they "have been deprived of and will be deprived of their rightful inheritance[.]" The mutual wills in question provide that Plaintiffs will receive property held jointly by Ellen and Robert only after both of them have died. Plaintiffs cannot have suffered any ascertainable injury as the result of Williams' alleged negligence while Ellen is alive, because a person has no fixed or vested interest in the testator's property prior to the death of the testator. *In re Estate of Schulze,* 105 S.W.3d 548, 551 (Mo.App. E.D.2003). "Until the death of the testator, a devisee under a will is merely an 'heir expectant' or 'heir apparent,' with only the expectancy of an inheritance." *Id. See also Miller v. Mauzey,* 960 S.W.2d 564, 567 (Mo.App. W.D.1998).

■ Furthermore, as per our earlier discussion, because the language of the mutual wills does not give rise to a contract not to revoke; Ellen may change her will at any time. A will is not effective until the death of the testator. *Crampton v. Osborn,* 356 Mo. 125, 201 S.W.2d 336,

342 (1947). At any time during her life Ellen may revoke her will for any cause, or for no cause. *Id.* "A general maxim which equity recognizes is that a testator's will is ambulatory until his death. It is a disposition of property which neither can nor is supposed to take effect until after death." *Wimp v. Collett,* 414 S.W.2d 65, 70 (Mo. 1967).

The possibility that Plaintiffs will be deprived of their inheritance because of the alleged negligence of Williams is, as of now, purely speculative and uncertain. Only at the time of Ellen's death would any alleged damages be ascertainable. It is not certain whether Ellen will have any assets to pass through her will upon her death, whether Ellen will once again change her current will, or whether Plaintiffs will survive Ellen. While Ellen is alive, Plaintiffs, as a matter of law, cannot have suffered any ascertainable loss due to the alleged negligence of Williams. *See Stigers v. City of St. Joseph,* 166 S.W.2d 523, 529 (Mo.1942)(holding that the plaintiffs could not maintain an action seeking to recover damages for injury to future interest in real estate, because it was not certain they would ever have an estate or any vested right to protect, nor that they would survive the life tenant). For the foregoing reasons, Plaintiffs have failed to state a claim for legal malpractice. The trial court did not err in dismissing Count I of Plaintiffs' petition. Point one is denied.

The judgment of the trial court is affirmed.

BARNEY and LYNCH, JJ., concur.