

# In the Missouri Court of Appeals

## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| KEVIN TAYLOR, | ) | No. ED103448 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Hon. Ted C. House |
| JAMES ROBERTSON, | ) | |
| | ) | Filed: |
| Respondent. | ) | March 29, 2016 |

Kevin Taylor ("Appellant") appeals from the trial court's grant of summary judgment in favor of James Robertson ("Respondent"). Appellant argues the trial court erred in granting Respondent's motion for summary judgment because reciprocal wills executed by Fred Duncan and his wife, Janet Duncan, in 2005 created a valid contract not to revoke a will pursuant to Section 474.155 RSMo.[1] Thus, Appellant argues the later wills executed by Fred Duncan in 2008 and 2009, in which Respondent was entitled to distribution, are void and Appellant is entitled to the distribution outlined in the 2005 wills. We affirm.

Fred and Janet Duncan executed reciprocal wills in 2005. The introductory paragraph to Fred Duncan's will states:

> I, FRED DUNCAN, a married person residing in the County of St. Charles, State of Missouri, do make, publish and declare this instrument to be my last will and testament, hereby revoking and canceling all former wills and codicils by me at any time made. This Will is a reciprocal Will to a similar Will executed by my wife on this date. I hereby agree that no

---

[1] All further statutory references are to RSMo 1994, unless otherwise indicated.

change will be made to this Will without the consent of my wife, Janet Kay Duncan.

Likewise, the introductory paragraph to Janet Duncan's will states:

> I, JANET KAY DUNCAN, a married person, residing in the County of St. Charles, State of Missouri, do make, publish and declare this instrument to be my last will and testament, hereby revoking and canceling all former wills and codicils by me at any time made. This Will is a reciprocal Will to a similar Will executed by my husband on this date. I hereby agree that no change will be made to this Will without the consent of my husband, Fred Darrell Duncan.

Both wills provided that the Duncans' entire estate would go first to the other surviving spouse, and after both of their deaths, the remainder of the estate would be transferred to Appellant, Janet Duncan's son.

Janet Duncan died on May 2, 2008, and thereafter, Fred Duncan executed a new will in which Appellant was not entitled to anything. The 2008 will specifically states that Fred Duncan is "revoking and cancelling all former wills and codicils by me at any time made."

In 2009, Fred Duncan executed the "Self Administered Living Trust of Fred Darrell Duncan," which states none of his property is to be distributed to Appellant. Rather, the trust assets were to be distributed to Respondent, Fred Duncan's friend. Fred Duncan executed another new will in 2009 in which he directed that his assets be paid over to the Fred Duncan Revocable Living Trust. The 2009 will specifically states that Fred Duncan is "revoking and cancelling all former wills and codicils by me at any time made."

Fred Duncan died on February 28, 2013. Following his death, Respondent received over $330,000 in assets originally owned by Fred Duncan, individually or in trust.

In 2014, Appellant filed a petition for declaratory judgment, breach of contract and specific performance, unjust enrichment, and "money had and received." Appellant's first count

2

requested the trial court find the 2005 wills were irrevocable contracts not to revoke a will pursuant to Section 474.155. Respondent filed a motion for summary judgment arguing that the 2005 wills were not contracts not to revoke a will, and thus all of Appellant's claims must fail. The trial court granted Respondent's motion for summary judgment. The trial court entered judgment as a matter of law in favor of Respondent on all counts. This appeal follows.

In his sole point, Appellant contends the 2005 wills created contracts not to revoke Fred and Janet Duncan's respective wills because the material terms of a contract not to revoke were included in the wills. Therefore, Appellant argues the 2008 and 2009 wills are void and he is entitled to the distribution outlined in the 2005 wills. We disagree.

Appellate review of summary judgment is *de novo*. ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc. 1993). The propriety of summary judgment is purely an issue of law, and the appellate court need not defer to the trial court. Id. The facts in this case are not disputed, and the only issue is the interpretation of a contract.

In Missouri, a contract not to revoke a will is valid if it complies with Section 474.155, which states:

> A contract to make a will or devise, to revoke or not to revoke a will or devise, or to die intestate, if executed after January 1, 1981 can be established only by
> (1) Provisions of a will stating material provisions of the contract;
> (2) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
> (3) A writing signed by the decedent evidencing the contract. The execution of joint or mutual wills does not create a presumption of a contract not to revoke the will or wills.

Appellant contends the 2005 wills met the requirements of Section 474.155(1); he does not contend subsections (2) or (3) apply. In interpreting Section 474.155, courts have found a contract to make mutual wills remain unrevoked at the death of the parties is valid and

3

enforceable if fair and just, definite and certain in its terms and as to the subject, and based upon sufficient consideration. <u>Porter v. Falknor</u>, 895 S.W.2d 187, 189 (Mo. App. E.D. 1995). The existence of a contract not to revoke a will must be proven by "clear, cogent, and convincing evidence." <u>Moran v. Kessler</u>, 41 S.W.3d 533 (Mo. App. W.D. 2001). "To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof." <u>Id</u>. Additionally, "all essential terms of a contract must be sufficiently definite to enable the court to give them exact meaning." <u>Porter</u>, 895 S.W.2d at 189. Courts presume the words used in contracts are intended to have their natural and ordinary meaning. <u>Marshall v. Pyramid Development Corp</u>., 855 S.W.2d 403, 407 (Mo. App. W.D. 1993).

First, the wills here do not contain definite and certain terms to establish irrevocability, and this Court is unable to give them exact meaning. Appellant contends the statement in the introductory paragraph of the wills, "I hereby agree that no change will be made to this Will without the consent of my wife, Janet Kay Duncan," is definite and certain. However, the statement does not account for the death of Janet Duncan. The phrase, "without the consent of my wife," implies that Janet Duncan would need to be living in order to obtain her consent. After her death, it became impossible for Janet Duncan to consent, which suggests her consent was only needed while she was living. Therefore, the wills do not definitely and certainly state that they are irrevocable even after death.

Second, the words "change" and "irrevocable" are not synonymous. Merriam-Webster defines "change" as "to become different." *Change*, MERRIAM-WEBSTER DICTIONARY *available at* merriam-webster.com. However, the definition of irrevocable is much more stringent: "unalterable; committed beyond recall." *Irrevocable*, BLACK'S LAW DICTIONARY (10th ed.

4

2014). The plain meaning of the agreement not to change the wills does not rise to the level of irrevocability. The combination of the words "this Will" and "change" may limit what could be done to the 2005 wills while the other spouse was alive, but that language fails to address the possibility of creating an entirely new will after either spouse's death. For these reasons, the wills do not contain definite and certain terms to establish a contract not to revoke even after death.

Third, had the Duncans wanted to use more precise language to establish the irrevocability of the 2005 wills even after death, they could have. The drafter could have used language such as "no change will be made to this Will nor can my spouse create a new will after my death" to more clearly state the intentions of the parties. Additionally, the Duncans knew how to make a term definite by using words like "give," "devise," and "direct." This case is similar to Porter v. Falknor where the court would not give legally binding force to the phrase "our mutual desire." 895 S.W.2d at 189. The court determined the parties knew how to make a term definite by using legally binding language and failed to do so by using the phrase "our mutual desire." Id. Here, the Duncans failed to use definite terms to state their intent to make the wills irrevocable after death such that no other wills could be created.

Last, this case is distinguishable from the case Appellant relies on, Moran v. Kessler, 41 S.W.3d at 536. In Moran, the will reduced a prior oral agreement between a married couple to writing and noted that the agreement had been affirmed many times throughout the marriage. Id. These examples in Moran indicated the parties explicitly agreed how to distribute their property on numerous occasions. Here, there is only one line in the Duncans' wills that could indicate an agreement: "I hereby agree that no change will be made to this Will without the consent of my [spouse]." There may be some indication of an agreement through the use of the phrase "I

5

agree;" however, the "agreement" between the two parties is not explicitly a contract not to revoke, but rather is to an arrangement not to change the existing wills without consent while both parties were alive. These wills simply make no reference to the surviving spouse's right to enter a new will after the death of one spouse. [2]

Therefore, the trial court did not err in granting summary judgment because Appellant did not prove with clear, cogent, and convincing evidence the reciprocal wills executed by Fred and Janet Duncan created a valid contract not to revoke pursuant to Section 474.155. The wills did not set forth the material terms of a contract not to revoke in definite and certain terms. Point denied.

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.

---

[2] Appellant also argues in reliance on Shawnee Bend Development Company, LLC v. Lake Region Water & Sewer Co., 419 S.W.3d 817, 824 (Mo. App. E.D. 2013) that because the wills were reciprocal they became a single contract not to revoke; however, there is no presumption of irrevocability for reciprocal wills. Moran, 41 S.W.3d at 537. Additionally, Appellant contends the subject matter of the wills is the contract not to revoke but because the language of the wills does not establish a contract to revoke even after death it is unnecessary to consider what the exact subject matter of the wills was.